[No. 14499.  Department One.  January 9, 1919.]

JOHN E. LARSON, *Respondent*, v. L. E. MURPHY *et al.*,
*Appellants*.[1]

TAXATION (153, 209)—FORECLOSURE—SUMMONS BY PUBLICATION—
EVIDENCE TO SET ASIDE. In an action to set aside tax deeds, the evi-
dence shows that plaintiff in a tax foreclosure used due diligence
and was unable to locate the owner for personal service before
resorting to service by publication, where it appears. that diligent
inquiry was prosecuted without success and that the owner had left
the city without leaving any address.

SAME (163)—TAX TITLE—CONCLUSIVENESS—BURDEN OF PROOF.
The burden is upon the owner who asserts the invalidity of a tax
title to overcome the deed by competent and controlling evidence.

SAME (151-154)—FORECLOSURE—NOTICE TO OWNER. The owner of
property is chargeable with knowledge of the delinquency of taxes
and of every step in the tax foreclosure.

Appeal from a judgment of the superior court for
King county, Mackintosh, J., entered August 10, 1917,
in favor of the plaintiff, in an action to cancel deeds,
tried to the court. Reversed.

*Douglas & Schramm*, for appellants.

*Frank Oleson, Alfred C. Oleson* (*O. L. Willett*, of
counsel), for respondent.

MAIN, C. J.—The purpose of this action was to can-
cel and set aside deeds to real estate which had been
made as the result of the foreclosure of two certain
tax certificates of delinquency. The trial resulted in
a judgment as prayed for in the complaint. From
this, the defendants appeal.

The facts may be summarized as follows: The
property involved is two vacant and unimproved lots
in the city of Seattle. These were acquired by one
John E. Larson sometime during the year 1905, and

[1]Reported in 177 Pac. 657.

he either paid or caused the taxes to be paid thereon up to and including the year 1911. The taxes for the year 1912 were not paid. On or about June 1, 1914, delinquent tax certificates were obtained by one R. H. Coshun from the county treasurer covering the two lots, who also paid the taxes for the subsequent years. In 1916, the holder of the delinquent tax certificates began actions to foreclose the same and sought to obtain service by publication. In these proceedings judgment of foreclosure was taken by default and, in due time, deeds issued and delivered to the holder of the certificates. Thereafter the property was transferred by quitclaim deed to one L. E. Murphy, who, together with his wife, are appellants in this action. As above stated, the trial court entered a judgment canceling and setting aside the county deeds to Coshun, and also the quitclaim deed from Coshun to Murphy. Larson, the owner of the property, was, at the time of the foreclosure of the certificates of delinquency, a resident of the county in which the property was located and in which the actions were brought.

The controlling question, as presented by the briefs, seems to us to be whether the holder of the certificates of delinquency, prior to resort to constructive service, had exercised ordinary diligence in an endeavor to locate and serve the owner personally. The appellants' contention is that Larson could not be found by the exercise of such diligence, and respondent makes the counter contention that he could have been found.

The procedure in each of the tax foreclosures was fair upon its face and shows a compliance with the statute. For the purpose of this case we may accept it to be the rule that, even though the procedure be fair upon its face and shows a compliance with the statute, yet, if there was not the exercise of ordinary

diligence in an endeavor to locate and personally serve a resident defendant, a tax title is vulnerable in a direct proceeding for that reason. Inquiry must be directed, then, as to what the record shows with reference to an endeavor to locate and personally serve the defendant in the tax foreclosure proceedings. The facts are not in dispute. The evidence shows that, prior to resorting to substituted service, the plaintiff in the tax foreclosure proceedings caused inquiry to be made by persons living in the vicinity where the property was located to ascertain where the owner of the property could be found. An endeavor was made to locate him through the Title Trust Company, and an investigation of the records in the office of the county treasurer. A letter was sent to John E. Larson, addressed care of Anton E. Larson, 1420 Boylston avenue, Seattle. This letter was returned unopened. The taxes for the year 1911 had been paid by Anton E. Larson, and the duplicate receipt kept in the treasurer's office showed his residence to be 1420 Boylston avenue. After process had been placed in the hands of the sheriff for service, a deputy sheriff visited the latter address seeking to find John E. Larson, and also made inquiry at a rooming house located at 1817 Ninth avenue, Seattle. For a few months prior to the month of March, 1916, John E. Larson had lived at this place. The sheriff being unable to locate him, made a return to that effect. Thereafter the statutory requirements for service by publication were complied with.

Specific mention is made in respondent's brief of the fact that, in the Seattle city directory for 1916, Larson's residence appeared as 1817 Ninth avenue, and also of the fact that the lady who operated the rooming house at the time he resided there and who, at the time the process was delivered to the sheriff

in the month of August that year, was living a few doors away, visited the rooming house for the purpose of getting any mail that might come for Larson. This lady, however, testified that she had never received any mail there, and that she did not know where Larson was after he left the rooming house and during the time that the tax foreclosures were being prosecuted. The record fails to point out any manner in which it would have been possible to locate Larson in order that personal service might have been had upon him. From some time in March, when he left the rooming house, until subsequent to the foreclosure proceedings, he was working in a logging camp a mile or a mile and a half from Des Moines. Under these facts, the tax title cannot be disturbed because of the claim that ordinary diligence was not exercised in an endeavor to locate the owner of the property.

When a tax title is sought to be overthrown, the burden is on the one who asserts its invalidity to overcome the deed by competent and controlling evidence. *Sparks v. Standard Lumber Co.*, 92 Wash. 584, 159 Pac. 812.

The respondent's principal reliance seems to be placed upon the case of *Olson v. Johns*, 56 Wash. 12, 104 Pac. 1116. In fact, upon the oral argument it was stated that that case would sustain the judgment, but that case is obviously distinguishable from the present in at least two respects. First, there no attempt was made to locate and serve the owner personally. No search was made by the person making the affidavit, and the sheriff's return "Not found" was immediately made upon the presentation to him of the notice and summons and affidavit of nonresidence. Second, it was there affirmatively shown that the

owner of the property could easily have been located through the address given in the city directory. In the present case, as already pointed out, a search was made, not only by the holder of the certificates, but by the sheriff, and it affirmatively appears that there was no way of locating Larson through the address given in the city directory.

Upon the record, as we view it, the judgment cannot be sustained. The owner of the property was chargeable with knowledge that the taxes were unpaid; the duty rested upon him to see to their payment, if he would prevent his land being sold therefor; he was chargeable with knowledge of every step in the foreclosure procedure, including the fact that certificates of delinquency might issue for unpaid taxes and in due time foreclosure be had which would divest his title. *Williams v. Pittock,* 35 Wash. 271, 77 Pac. 385; *Sparks v. Standard Lumber Co., supra.*

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

FULLERTON and PARKER, JJ., concur.