[No. 19645. Department One. May 12, 1926.]

CHARLES E. LIND, *Appellant,* v. THE CITY OF BELLING-
HAM, *Respondent.*[1]

[1] DEDICATION (28) — MUNICIPAL CORPORATIONS (345) — PLATS BY
LANDOWNERS—ABANDONMENT—FAILURE TO RECORD. There was
evidence tending to show the abandonment of a plat and the
laches of a city, and it was error to exclude evidence of the good
faith of an innocent purchaser, where the plat of an addition,
accepted by the city, was not filed for record as required by
Rem. Comp. Stat., §§ 9278, 9279; and a subsequent plat by the
same dedicator overlapping a part of the property was accepted
by the city and filed of record, and the purchaser in good faith
of acreage not covered by the last plat had been in undisputed
possession for eighteen years and made extensive improvements
without notice that the city claimed any streets through the
property.

Appeal from a judgment of the superior court for
Whatcom county, Brown, J., entered June 23, 1925,
upon findings in favor of defendant in an action for
an injunction, tried to the court. Reversed.

*Sather & Livesey,* for appellant.

*Dan F. North,* for respondent.

FULLERTON, J.—On May 10, 1906, one Teresa Eld-
ridge, being then the owner of a tract of land lying
within the city limits of the city of Bellingham, pre-
pared a plat of the tract dividing it into streets, blocks
and lots, entitling the plat, "Eldridge's Second Addi-
tion to the city of Bellingham, Whatcom county, Wash-
ington." The plat was acknowledged in the manner
prescribed by the statute, and was, on the date given,
presented to the city council of the city of Bellingham,
and was by that body accepted and approved. The
westerly street shown on the plat was called thereon

Lafayette street, and extended through the property for its full length. To the west of Lafayette street, was a single tier of blocks numbered 12, 13, 14 and 15. The blocks were divided into eight lots each, the lots being 60 feet by 100 feet in size. To the west of the blocks, was an alley 16 feet in width. The northerly street shown on the plat was called thereon Illinois street, and extended east and west through the property. The record does not disclose what became of the plat after its acceptance and approval by the city council but does show that it was never recorded in the auditor's office of the county in which the land is situate.

Teresa Eldridge also owned another tract of land lying immediately to the west of the above mentioned tract and abutting thereon. On April 9, 1907, she prepared another plat, entitling it "Eldridge's Second Addition to the city of Bellingham, Washington," which on that day she presented to the city council of the city of Bellingham, and which was by that body on the same day accepted and approved. The eastern boundary of the tract covered by this plat coincided with the east line of the street called Lafayette street on the first plat, and covered an area lying westerly thereof. A street was laid out on the east side of the plat, called Lafayette street, which coincided with the first Lafayette street, except that it was 55 feet in width instead of 60 feet. The tier of blocks lying west of Lafayette street on the first plat was platted anew into blocks of different numbers, with lots of greater length but of narrower width than those shown on the first plat. It also covered additional property of the dedicator lying farther to the west. This plat was duly acknowledged, and was recorded in the auditor's office of Whatcom county on April 19, 1907.

On April 11, 1907, Teresa Eldridge sold and conveyed to the appellant, Charles E. Lind, all of the

property included within the first plat lying east of the Lafayette street, so named on the second plat. The property was described in the deed of conveyance as acreage property. While, for the purposes of description, it made reference to the second plat, it contained, no reference to the first. Before making the purchase the appellant required an abstract of the title to the property to be furnished him, and this likewise contained no reference to the original plat.

In March, 1925, the city of Bellingham, through the employees of its water department, entered upon the land purchased by the appellant at the place designated on the original plat as Illinois street and proceeded to dig a trench for the purpose of laying a water main. The appellant thereupon began the present action to enjoin the city from so doing. Issue was taken on the complaint and a trial was had by the court sitting without a jury, resulting in a dismissal of the action. The appeal before us is from the judgment of dismissal.

In defense to the facts alleged by the plaintiff in his complaint, which tended to show an unlawful trespass upon the property by the city, the city set up the first of the dedicatory plats executed by Teresa Eldridge, contending that its entry was lawful and of right, because made upon one of the streets marked thereon as dedicated to public use. To this defense the appellant pleaded, and at the trial offered to prove, that, at the time he purchased the property, it was enclosed by a fence and was in the sole and exclusive possession of his grantor; that it did not then bear any indication on the ground that it had been platted into lots and blocks, and that he had no knowledge otherwise that it had been so platted; that no lots or blocks had ever been sold therein with reference to such plat; that upon his purchase he entered into possession of the prop-

erty, and, up to the time of the entry by the city thereon, a period of some eighteen years, had maintained the sole and exclusive possession of the property without let or hindrance on the part of the city or anyone; that he was at the time of the purchase, and was at the time of the trial, engaged in the business of road and street construction and repair, in which sand and gravel are used, and purchased the property largely because of the deposits of sand and gravel it contained; that, in furtherance of his business, he had constructed on the land sand and gravel cleaners and bunkers, at a cost to himself in a sum in excess of $20,-000. He further offered to show that the land had been assessed to him during all of the time of his ownership as acreage property, and that he had paid taxes to the city and county on the basis of such an assessment; and that the official maps of the city did not disclose that the land had ever been platted into lots and blocks.

To his pleading setting up the facts recited, the trial court sustained a demurrer, and on the trial refused the appellant's offer to prove the facts. The rulings of the court in this behalf constitute the errors assigned.

[1] It would seem that the facts the trial court did admit in evidence were sufficient to cast a doubt on the validity of the claims of the city. The fact that the first plat was never recorded, and the further fact that the second one included a part of the territory of the first and was so far similar in title as to be hardly distinguishable therefrom, alone lends credence to the thought that both the dedicator of the second plat and city officers who approved it regarded the first one as abandoned. Manifestly, conveyances made describing the property conveyed according to the plats, even in instances where there was no conflict between them, would lead to uncertainty and confusion, and, as to the

territory over which they conflict, no certainty at all would attach to the conveyances, as the same tract could be lawfully conveyed under two conflicting descriptions. There was, therefore, either an abandonment of the first plat, or a gross neglect of duty on the part of the city officers. These considerations are perhaps not conclusive, but they have a manifest bearing on the general aspects of the case.

There was error in the rejection of the proffered evidence. Much of it is, of course, evidence tending to show the good faith of the appellant, but parts of it tended to show that he was an innocent purchaser of the property; that is to say, was a purchaser for value without notice of the claims of the city. The first plat was not placed of record, although this is a requirement of the statute (Rem. Comp. Stat., §§ 9278, 9279) [P. C. §§ 7607, 7608]. The recording statutes are applicable to municipalities as well as to private individuals, and the rule is that a person purchasing real property may rely on the record title to the property, in the absence of knowledge of title in another, or of facts sufficient to put him on inquiry.

"He who acts in reliance on the record has behind him not only the natural equities of his position, but also the especial equity arising from the protection afforded every one who trusts the record." 23 R. C. L. 197, § 52.

It follows that there must be a new trial. However, should the court find on the new trial that the appellant was a purchaser without notice of the claims of the city, it will not necessarily enter a decree of ouster against the city in the first instance. The evidence indicates that the city may have completed the laying of the water main across the lands. Should this prove to be the fact, the court will give the city the opportunity to

condemn a right of way for its purposes and enter a final decree of ouster in the case it refuses so to do.

The judgment is reversed and the cause remanded with instructions to proceed in accordance with the conclusions of this opinion.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.