[No. 22453. Department One. August 25, 1930.]

SAMUEL McMURREN *et al., Respondents,* v. ELBERT MILLER *et al., Appellants.*[1]

*Gus L. Thacker,* for appellants.
*J. E. Stone,* for respondents.

TOLMAN, J.—This is an action to set aside a general tax foreclosure, as it affects certain lands, and the deeds subsequently executed and delivered, and to quiet title in the plaintiffs. The plaintiffs obtained judgment below as prayed for, and the defendants have appealed.

It appears that, on August 11, 1915, Andrew J. Kramer and his wife, by deed of that date, became vested with title to lots 1, 2 and 3, and the northeast quarter of the northwest quarter of section 19, township 6, north of range 3 east of the Willamette meridian, in Cowlitz county. The subdivision described as lot 3 is what would have been the southeast quarter of the northeast quarter of the section, had it been regular in size. On March 31, 1917, the then owners of the southeast quarter of the northeast quarter of

[1] Reported in 290 Pac. 879.

section 19, township 6, north of range 4 E. W. M., lying six miles east of the Kramer land first above described, in an attempt to convey to one Strasser and wife the east fifteen acres of their tract, executed and delivered to Strasser a deed describing the land conveyed as:

"Beginning at the northeast corner of the southeast quarter of the northwest quarter of section 19, in township 6 north of range 3 east of the Willamette meridian, thence 80 rods south, thence 30 rods west, thence 80 rods north, thence 30 rods east to the place of beginning, containing 15 acres."

The grantors in this deed had no title to the land therein described, but apparently did have title to a similarly described tract in range 4, E. W. M., which, of course, they intended to describe and convey. This deed was recorded in volume 66 at page 501 of the deed records of Cowlitz county.

Up to this time, Kramer's lands had always been described on the tax rolls as—

"Lots 1, 2 and 3    Sec. 19, Twp. 6, R. 3,    92.88 acres
"NE¼NW¼             Sec. 19, Twp. 6, R. 3,    40    acres"

Thereafter, the county treasurer placed the following upon the tax rolls of Cowlitz county:

|  | Sec. | Twp. | Rge | Acres | As'sm't |
|---|---|---|---|---|---|
| "L-1-2-T-2 67-399 ....19 | | 6 | 3E | 77.88 | $27.61 |
| "NE¼NW¼ ........19 | | 6 | 3 | 40 | 8.18 |
| "T-1 (pt L-3) 66-501...19 | | 6 | 3 | 15 | 3.07;" |

which descriptions became effective for the 1920 tax.

It appears to have been the custom to note in such descriptions the book and page of the deed records for reference, and the figures "67-399" in the first line referred to the record of the deed by which Kramer acquired title to the whole tract, while the figures "66-501" referred to a like record of the incorrect deed to Strasser covering a part of lot 3.

Kramer paid all taxes up to the time the new description on the tax rolls became effective. Thereafter, in March, 1921, and seasonably in each year thereafter, Kramer, by letter properly describing his land or by personal visits to the office of the county treasurer, presenting his deed or earlier tax receipts, requested of the county treasurer a statement of his taxes, his requests always including lot 3, but the statements furnished by the treasurer and the receipts given, when Kramer paid according to the statements so furnished to him, omitted lot 3 or any direct reference thereto. The last line of the description on the assessment rolls as given above, "T-1 (pt L-3) 66-501," was assessed to Strasser for the years 1920 to 1927, inclusive, and the taxes so assessed were not paid by anyone.

In November, 1926, a general foreclosure action was begun by the county, and the land with which we are here concerned was described in the summons as follows:

| "Assessed to | Description | Sec. | Twp. | Rng. | Amt. |
|---|---|---|---|---|---|
| "Fred L. Strasser | T-1 | 19 | 6 | 3E | 5.01" |

Under this description, the action proceeded to judgment, neither Kramer or his wife having been made parties thereto or in any wise appearing. The county became the purchaser at the foreclosure sale, and the treasurer's deed to it described the land as "tract 1 of section 19, township 6 north, range 3 east of the Willamette meridian."

In June, 1927, the county deeded the land to appellants under the description:

"Tract numbered one (1) of section nineteen (19) township six (6) north range three (3) east of the Willamette meridian, as described at page 501 of vol. 66, records of Cowlitz county."

On July 23, 1928, Kramer and wife conveyed the land to the respondents by good and sufficient deed. In

February, 1929, respondents first learned of what had taken place and of the cloud thus placed upon their title, whereupon they made a sufficient tender to the appellants, which was refused, and this action was promptly instituted.

Appellant advances an argument to the effect that Kramer was put on notice by the receipts given him by the county treasurer that he was not paying taxes upon the full description which he owned, and that his own neglect in failing to investigate should bar him and his successors in interest; but each of the tax statements and receipts given to Kramer by the county treasurer contained the figures "L-1-2-T-2 67-399," and if Kramer knew what these abbreviations meant, he would have read them as describing lots 1 and 2 and tract 2, according to the descriptions contained in the deed recorded in book 67 of deed records at page 399, and would naturally assume that tract 2 was the assessor's description of lot 3, and that the whole conformed to the descriptions in the deed by which he took title.

It is also argued that, as, by notice, printed on the tax receipts, the tax payer was requested to examine for errors and report any that might be found to the treasurer at once, Kramer was at fault in not discovering that his taxes were in part unpaid. But we think the question here is one of jurisdiction, and if the court did not obtain jurisdiction of the *rem,* then the judgment of foreclosure was invalid without reference to the diligence or lack thereof on the part of the tax payer.

Subdivision 54 of § 11097, Rem. 1927 Sup., provides:

"The assessor shall list all real property according to the largest legal subdivision as near as practicable. The assessor shall make out in the plat and description book in numerical order a complete list of all lands or

lots subject to taxation, showing the names and owners, if to him known and if unknown, so stated; the number of acres and lots or parts of lots included in each description of property and the value per acre or lot; provided, that the assessor shall give to each tract of land where described by metes and bounds a number, to be designated as Tax No............, which said number shall be placed on the tax-rolls to indicate that certain piece of real property bearing such number, and described by metes and bounds in the plat and description book herein mentioned, and it shall not be necessary to enter a description by metes and bounds on the tax-roll of the county, and the assessor's plat and description book shall be kept as a part of the tax collector's records; . . ."

If, therefore, the assessor made a proper record in his plat and description book, he might have described this tract on the rolls as Tax No. 1, and one examining the rolls could have gone to the book and ascertained a full, true and complete description of the property taxed under that number, but "T-1," as used in the summons, not only does not follow the tax roll, but it does not necessarily mean Tax No. 1, and to the uninitiated it may be, and apparently is, utterly meaningless. Such a description in a deed would require oral testimony to establish what was intended to be conveyed, and would render the deed void under the statute of frauds; and where, as in tax foreclosures, the proceedings are *in rem,* there must be a sufficient description to identify the property or lead to such written records as will identify it. As we said in *McGuire v. Bean,* 151 Wash. 474, 276 Pac. 555:

"The first and primary purpose of the description in the published notice is to acquire jurisdiction *in rem,* though this thought has not always been clearly expressed in dealing with the subject. Manifestly the court may not acquire jurisdiction of one thing by describing another. . . ."

Nor may the court acquire jurisdiction by describing nothing which is intelligible except to those with special knowledge of some special custom.

We think the case of *National Bank of Commerce v. Davies,* 112 Wash. 106, 191 Pac. 879, upon which appellants chiefly rely, is clearly distinguishable upon the facts.

The published description was not the description shown upon the tax rolls. Incomplete as the description upon the rolls was, still it showed that "T-1" had something to do with lot 3, and the figures "66-501," if understood correctly, would have led to the record of a proper description. We can find here no substantial compliance with the statute.

"Abbreviations which are commonly known and generally understood are permissible in the description of land in tax proceedings. . . .

"But where abbreviations which are not commonly used by conveyancers nor generally understood by the public at large are used in describing land, in tax proceedings, the description is insufficient, and, therefore, any and all steps taken thereunder are invalid." 1 A. L. R. 1228.

Many cases are there cited which fully sustain the text quoted.

We think this case falls within the rule announced in our own case of *Moller v. Graham,* 101 Wash. 283, 172 Pac. 226, and the judgment is therefore affirmed.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.