[No. 28100. *En Banc.* June 20, 1941.]

JAMES L. NAPIER et al., *Appellants,* v. MARY A. RUNKEL, *Individually and as Executrix, et al., Respondents.*[1]

[1]Reported in 114 P. (2d) 534.

*B. Gray Warner, Edward E. Henry, Lloyd W. Shorett,* and *Lew E. Flanders,* for appellants.

*A. C. Van Soelen, John A. Homer, Hyland, Elvidge & Alvord,* and *Monroe Watt,* for respondents.

*Weter, Roberts & Shefelman* and *Wayne C. Booth,* amici curiae.

BEALS, J.—King county, a municipal corporation, and James L. Napier, as plaintiffs, instituted this action before the superior court for King county, asking a decree quieting King county's title to certain real estate. The first amended complaint (hereinafter referred to as the complaint) alleged that August 31, 1938, King county instituted a general tax foreclosure action against all real estate within the county upon which the taxes for the years 1930 and 1931 were unpaid. Included among these descriptions, was a tract described as "lots 7, 8 and 9, block 4, Gilbert's Avion City, according to the unrecorded plat thereof." It

appears that the land within the unrecorded plat lies within the limits of the city of Seattle. In the fore-closure proceeding, the property was not described save as above quoted. December 29, 1938, a decree was entered in the tax foreclosure proceeding, fore-closing many certificates of delinquency against de-scriptions named in the decree, including the property above described.

It was further alleged that all of the property de-scribed in the decree, including the description above referred to, was offered for sale at tax foreclosure, pur-suant to publication and posting of statutory notices of sale, and that a copy of the notice of sale was served upon the city of Seattle, by delivering a copy to the city treasurer. No bids were made for the property with which we are here concerned, and a deed thereof was accordingly issued by the county treasurer, con-veying the land to King county. At all times with which we are here concerned, there was on file in the office of the assessor of King county, in a bound vol-ume of unrecorded plat additions, a copy of the plat of Gilbert's Avion City addition to Seattle, King county, Washington, which plat was prepared by a qualified engineer. A copy of the so-called plat is attached to the complaint. It shows neither dedica-tion nor acknowledgment by anyone, and it does not describe the land embraced within the plat save by a reference to a government corner which it is stated is 659.79 feet west of the northwest corner of the plat.

It was further alleged that the city of Seattle at all times had in its possession, through its officers and agents, copies of the unrecorded plat, as a part of the records in the office of the city treasurer, and in the office of the city engineer, and that, in extending local improvement district assessments against the property embraced within the unrecorded plat, the officers and

agents of the city had used the unrecorded plat description, together with a metes and bounds description.

It was further alleged that Fred S. Gilbert, the owner of the property, and who had prepared the unrecorded plat, died prior to the institution of the action, and that Mary A. Runkel and Joseph C. Sharp, named with the city of Seattle as defendants in the action, were, respectively, executrix and administrator of the estate of Fred S. Gilbert, deceased, and as such "were the record owners of the property" in question, and as such owners, as representatives of the estate, had, June 30, 1937, paid taxes against the property for the year 1929.

It was also alleged that, July 20, 1939, the property described as lots 8 and 9, in block 4, was offered for sale by the treasurer of King county, and August 17th following, lot 7, in block 4, was offered for sale, and that all three of the lots were sold at public auction, on contract, to plaintiff James L. Napier, the property being described as hereinabove set forth.

Plaintiffs further alleged that, prior to the decree of foreclosure, the defendant city of Seattle had levied assessments against the property, describing the same by metes and bounds, and also by reference to the unrecorded plat. Plaintiffs alleged that these assessments were barred by the county tax foreclosure sale, and that, by such sale, the interest of all the defendants above named in the property was terminated. Plaintiffs asked for a decree quieting King county's title to the property.

The defendants demurred to the complaint, and the trial court having sustained the demurrer, and plaintiffs having elected to stand upon their first amended complaint, judgment was entered dismissing the action, from which plaintiffs gave separate notices of appeal.

250

Error is assigned upon the ruling of the trial court sustaining respondents' demurrer, and upon the entry of judgment dismissing the action.

■ While appellant James L. Napier appealed from the judgment, he failed to file any cost bond in support of his appeal, and the appeal of James L. Napier is accordingly dismissed. *Public Utility Dist. No. 1 v. Girard,* 198 Wash. 149, 87 P. (2d) 287.

By Rem. Rev. Stat., § 10603 [P. C. § 1641], every county auditor is, *inter alia,* required to

". . . keep a well-bound book in which shall be platted all maps of towns, villages, or additions to the same within the county, together with the description, legend, acknowledgment or other writing thereon."

The section also required the auditor to properly index the contents of the book of plats. By a proviso contained in this section, the auditor is directed not to receive or record any plat until the same shall have been approved by the proper city or county authorities.

The preparation and filing for record of plats within cities or towns is covered by Rem. Rev. Stat., § 9288 [P. C. § 1176] *et seq.* By § 9290 [P. C. § 1179] it is provided that a plat must be acknowledged by the person offering the same for record, and all taxes against the property platted must be paid, as provided in the section last cited and § 9291 [P. C. § 1180]. By the proper filing of a plat for record, the streets and alleys shown thereon are dedicated to the use of the public, and the proper authorities have previously been afforded an opportunity to check the surveys of the land platted, and ascertain that such surveys, as shown on the plat, are accurate. By these different statutes, the rights both of the public and persons who may purchase land embraced within the tract receive some degree of protection.

Of course, one selling land from a plat or map which

has not been filed for record may be, as to certain persons, estopped from denying the dedication of streets shown thereon, but as to such a matter, the result would depend upon the facts of each individual case. The offer and acceptance for record of the plat, then, is a regular, orderly step in the statutory procedure for the determination of the title to and ownership of platted real estate.

The disadvantages which follow from the use of a so-called unrecorded plat are obvious. The surveys of the land shown thereon have never been checked by official authority; streets and alleys have not been regularly dedicated as such to the use of the public; and in so far as the plat itself is concerned, the verification of descriptions of land, with reference to the plat, cannot be made by statutory record. Such a plat may be lost or destroyed, there can be no official copy of such a plat, it may be changed from time to time, and there are other objections to its use.

The complaint alleges that the Fred S. Gilbert whose executrix and administrator are respondents herein caused to be prepared the unrecorded plat of Gilbert's Avion City Addition to Seattle, but whether or not he was the owner of all the land embraced within the plat, we are not informed.

Rem. Rev. Stat., § 11136 [P. C. § 6882-53], directs the county assessor to outline a plat of irregular subdivided plats of land, other than regular government subdivisions, and request the owners thereof to have the same surveyed by the county engineer and platted into numbered or lettered lots or tracts, provided that if the county has in its possession correct field notes of such tract of land, a new survey shall not be necessary. The section further provides that, if the owner neglects to have such a survey made, the county commissioners may direct the county engineer to make such survey.

Section 11137 [P. C. § 6882-54] directs the assessor to list all real property according to the largest legal subdivision as near as practicable, and to extend in the plat and description book in numerical order a complete list of all land or lots subject to taxation, showing the names of the owners, if known, the number of acres, etc., and the value per acre or lot, continuing:

"Provided, that the assessor shall give to each tract of land where described by metes and bounds a number, to be designated as Tax No. ——, which said number shall be placed on the tax-rolls to indicate that certain piece of real property bearing such number, and described by metes and bounds in the plat and description book herein mentioned, and it shall not be necessary to enter a description by metes and bounds on the tax-rolls of the county, and the assessor's plat and description book shall be kept as a part of the tax collector's records . . ."

Rem. Rev. Stat., § 11278 [P. C. § 6882-117], a portion of the statutory procedure provided for the collection of delinquent taxes and the sale of land pursuant thereto, provides

" . . . that notice and summons may be served or notice given exclusively by publication in one general notice, describing the property as the same is described on the tax-rolls."

From the record in the case at bar, it appears that the notice and summons served and published did describe the property in question as the same was described on the tax rolls. The question here presented concerns the adequacy of the description to confer jurisdiction upon the superior court to enter judgment foreclosing the tax lien against the property above referred to, respondents contending that the description of the property as borne on the tax rolls and as contained in the notice and summons was insufficient to vest the superior court with jurisdiction

of the particular property with which we are here concerned. In other words, respondents contend that the description of the property as contained on the tax rolls and in the notice and summons was so defective that the superior court never acquired jurisdiction of the *res,* and that, for this reason, the tax foreclosure proceedings were void, in so far as the particular property referred to was concerned.

In the case of *Ontario Land Co. v. Yordy,* 44 Wash. 239, 87 Pac. 257 (affirmed by the supreme court of the United States, 212 U. S. 152, 53 L. Ed. 449, 29 S. Ct. 278), this court, considering a problem somewhat similar to that here presented, said:

"When real estate is listed and assessed for taxation, it is ordinarily necessary that the assessment roll shall contain a reasonably accurate description of the tract sought to be taxed. The object of this requirement is stated by writers on taxation and tax titles to be three-fold, (1) it is designed to inform the owner of the claim upon his property; (2) it is designed that intending purchasers may know what property will be offered for sale in the event of the taxes becoming delinquent; and (3) it is also the intention that under such description a proper deed may be executed to the purchaser. Cooley, Taxation (2d ed.), p. 405; Black, Tax Titles (2d ed.), § 112."

Of course, a person who prepares a plat, whether recorded or not, should be held to recognize a description of land referring to that plat, but an unrecorded plat would give no notice at all to one unfamiliar with such a document, as to the location of land described therein, and it might afford an insufficient basis for the execution of a deed conveying land foreclosed for delinquent taxes. An unrecorded plat, being no part of the official county records, is not constructive notice to anyone under the recording statutes, and unless the name of the plat might happen to be well known and suggest to persons seeing it a

recognized locality, it would probably convey to very few people actual notice concerning the land described. In any event, regardless of the number of persons to whom reference to an unrecorded plat might suggest some particular land, because of their actual notice of the unrecorded plat, under the recording statutes such a reference would not be legal notice to anyone. The question of actual notice would depend upon the proof in a specific case.

In the case of *Ontario Land Co. v. Yordy, supra,* the plaintiff's grantors platted a tract of land, numbering the blocks consecutively, but leaving a tract the equivalent of four blocks unplatted and marked "Reserve." The four block numbers by which the four unplatted blocks would have been designated had the same been platted were not used in the plat. Later, the county assessor placed this unplatted area on his books, describing the tract by numbered blocks, using the numbers as they would have appeared on the plat had the blocks been numbered consecutively, including the reserved area. A tax deed having been issued to two of these blocks as so numbered by the assessor, the plaintiff sued to quiet its title as against the purchaser. In reversing a judgment in favor of the plaintiff, and directing judgment in favor of the holder of the tax title, this court commented at considerable length upon the fact that the plaintiff had actual knowledge of the fact that a tax had been levied upon the reserved area, had denied the validity of such tax, and had later stood by during the foreclosure proceedings and tax sale, and with full knowledge permitted the defendant to purchase at that sale. This court was of the opinion that, under all the circumstances, the description was sufficient, and commented upon the fact that

"The entire course of the respondent would seem to have been adopted with a premeditated intention to

evade the payment of any taxes whatever upon the reserved tract, although at the time it knew the same was liable to taxation, and no court of justice should adopt any strained rule of construction the result of which would be to aid it in any such enterprise. It could have avoided any threatened cloud on its title or loss of its property by paying the taxes of which it had actual knowledge, and for the payment of which it knew it was justly liable."

The case was brought before the supreme court of the United States by writ of error, and that court, being of the opinion that the Federal question presented had been rightly decided by this court, affirmed the judgment. The plaintiff in error contended before the supreme court of the United States that, by the decision of this court, it had been divested of its property without due process of law. In affirming this court, the supreme court called attention to the knowledge of the situation on the part of the officers of the Ontario Land Co., and held that its contentions as to the lack of due process were without merit.

In the later case of *Ontario Land Co. v. Wilfong*, 223 U. S. 543, 56 L. Ed. 544, 32 S. Ct. 328, on appeal from a decision of the circuit court of appeals reversing a decree entered in favor of the plaintiff by the United States circuit court for the eastern district of Washington, southern division, a case involving the same facts presented in the *Yordy* case, the decision of the circuit court of appeals upholding the tax title was affirmed. In discussing the opinion of this court in the *Yordy* case, the supreme court of the United States held that that decision was based upon two grounds: One, that the descriptions of the property as contained in the tax foreclosure proceedings were sufficient and constituted due process of law; the other that the Ontario Land Co. had actual knowledge of the tax foreclosure proceedings. The decision having been

based upon both grounds, the supreme court noted that neither was *obiter*.

In the case of *Welch v. Beacon Place Co.,* 48 Wash. 449, 93 Pac. 923, this court held that a description of property contained in a tax foreclosure proceeding, describing a lot only as in "Syndicate Add.," the property being correctly described as lot 5, block 7, of Syndicate addition to the city of Seattle, was insufficient to support a tax foreclosure, there being other Syndicate additions in King county. It also appeared that the property was differently described in the summons, in the judgment of foreclosure, and in the deed, and that the owners of the property had paid taxes on the lot for many years, some after the levy of the tax for which the property was sold.

In the case of *Stanchfield v. Blessing,* 55 Wash. 620, 104 Pac. 800, it appeared that in a tax foreclosure proceeding, the property was described as the "NE ¼ or SW ¼," the word *or* incorrectly appearing for *of.* It was held that the mistake could have misled no one, and that the tax foreclosure was valid.

The *Yordy* case was not cited in either the *Stanchfield* or the *Welch* case.

In the case of *Lara v. Peterson,* 56 Wash. 70, 105 Pac. 160, a tax foreclosure was upheld, this court following the rule laid down in the *Yordy* case, that a description is sufficient if it affords an intelligent means for identifying the property, and does not mislead.

The cases of *Old Republic Mining Co. v. Ferry County,* 69 Wash. 600, 125 Pac. 1018; *Continental Distributing Co. v. Smith,* 74 Wash. 10, 132 Pac. 631; and *Merges v. Adams,* 137 Wash. 208, 242 Pac. 43, are to the same effect.

In the case of *McMurren v. Miller,* 158 Wash. 284, 290 Pac. 879, this court affirmed a judgment in favor of the plaintiffs, setting aside a tax foreclosure and quiet-

ing the title of the record owner (the plaintiff in the action) as against the tax sale. It appeared that a portion of the plaintiffs' property was described on the tax rolls as "T-1 (pt L-3) 66-501, sec. 19," etc. In a general tax foreclosure action later instituted, the land was described as assessed to one who was a stranger to the title of plaintiffs' land, and as "T-1, sec. 19," etc. Evidently by the symbols "T-1" the assessor intended to indicate tax lot No. 1, or tax No. 1, and this court held the description in the tax foreclosure proceeding insufficient, as neither identifying the property sought to be foreclosed, nor indicating such written records as would identify it. It is also true that the description of the land as shown in the tax foreclosure was not identical with the description as carried on the tax rolls. The court called attention to the fact that a tax foreclosure is a proceeding *in rem,* and that the purpose of describing lands sought to be foreclosed is to confer upon the court jurisdiction of the *res,* quoting from the case of *McGuire v. Bean,* 151 Wash. 474, 276 Pac. 555:

" 'The first and primary purpose of the description in the published notice is to acquire jurisdiction *in rem,* though this thought has not always been clearly expressed in dealing with the subject. Manifestly the court may not acquire jurisdiction of one thing by describing another . . . . , ' "

the court adding to the quotation:

"Nor may the court acquire jurisdiction by describing nothing which is intelligible except to those with special knowledge of some special custom."

As in the *Yordy* case, the decision in the *McMurren* case was based on two grounds: First, that the published description was so defective as to be utterly meaningless; and second, that the description of the land was not the same as that contained on the

tax rolls. As in the *Yordy* case, the discussion upon neither ground can be said to be *obiter dicta*. *Savage v. Ash*, 86 Wash. 43, 149 Pac. 325. The court cited the case of *Moller v. Graham*, 101 Wash. 283, 172 Pac. 226; 106 Wash. 205, 179 Pac. 858, on the phase of the case that the description of the property as contained in the tax foreclosure proceedings differed from the description as contained on the tax rolls.

The general rule is stated in 3 Cooley on Taxation (4th ed.), § 1175, referring to descriptions of real estate for the purpose of assessing taxes thereon: "A description that would be sufficient in a conveyance between individuals would generally be sufficient here." While of course the great majority of conveyances between private parties describe, in a legally correct and perfectly intelligible manner, the property conveyed, many conveyances have been made between private parties in which the land deeded is described by certain natural objects on the ground, or which sold simply the land which the grantor owned in a certain described area, which, without knowledge *de hors* the record, would convey little or no information to anyone as to the property covered by the deed. Many defective descriptions have been held good as between the parties to a conveyance, and reformed because of the facts shown.

The *McMurren* case is here in point, in so far as we held that the description as published was so defective as to be unintelligible except to persons possessing some special knowledge of a particular situation. The reference to the unrecorded plat of Gilbert's Avion City, with no indication as to where that unrecorded plat might be found, would convey nothing to one having no personal information concerning the unrecorded plat. It is not sufficient that the unrecorded plat might have been discovered after a search. The description

as set forth in the tax foreclosure must be sufficiently definite to confer jurisdiction upon the court in an action *in rem.*

In the recent case of *Matthews v. Morrison,* 195 Wash. 288, 80 P. (2d) 856, an action to set aside a tax deed, this court, referring to the matter of knowledge on the part of the owner of the land of the tax foreclosure proceeding, said:

"Julian O. Matthews insists that he did not have any notice of the tax foreclosure proceeding. Whether John G. Matthews, who died subsequent to entry of the judgment by the trial court, was orally warned by the deputy county treasurer that appellants' property would be included in the foreclosure proceedings, is not material. Appellants' knowledge of the proceeding would not give to the court jurisdiction in the foreclosure proceeding."

Upon the record in the case at bar, it stands admitted that on the county tax rolls the property in question was simply described by lots and block, "Gilbert's Avion City, according to the unrecorded plat thereof." Exactly this same description was carried through the tax foreclosure proceedings. During all this time, there was in the county assessor's office, in a bound volume of unrecorded plat additions, a copy of the plat of Gilbert's Avion City addition to Seattle. It does not appear that from any index in the assessor's office this plat could have been discovered, the record simply showing that the plat was physically in the assessor's office. The tax foreclosure proceedings contained no reference to the fact that such a plat was in the assessor's office. How the so-called plat happened to be in the assessor's office, we do not know. Neither do we know whether or not it was there considered an official record, bearing a file mark, or whether it was there simply on deposit, subject to removal at any time.

Our attention is called to no statute which requires the assessor to keep or index a book of unrecorded plats.

However private parties in conveying land may bind themselves by reference to an unrecorded plat or any other unrecorded map, chart, or sketch, such acts cannot have the result of making any such document so referred to an official record, unless the same be filed for record as provided by law. The question here presented bears little relation to questions arising through contracts of private parties *inter se*.

In the case at bar, we consider the question to be determined simply whether the description of the land, as contained in the tax foreclosure proceedings, was sufficient to confer jurisdiction upon the superior court to proceed against the land *in rem*, and by foreclosure to divest the title of the owner.

In the case of *Opsjon v. Engebo*, 73 Wash. 324, 131 Pac. 1146, this court held that, as between the parties, a contract concerning land described with reference to an unrecorded plat, was sufficient.

In the case of *Lind v. Bellingham*, 139 Wash. 143, 245 Pac. 925, this court considered questions which concerned an unrecorded plat. It appeared that May 10, 1906, the owner of a tract within the limits of the city of Bellingham platted the property, acknowledged the plat, and presented it to the city council, which approved it. The plat, however, was not recorded. Several months later, the owner prepared another plat of an addition bearing the same name as that described in the unrecorded plat, which plat was approved by the city council, and recorded. Prior to the date the second plat was filed for record, the owner sold to Mr. Lind, the plaintiff in the action, a tract of land included within the description contained in the first plat, the land being described as acreage, reference being made to the second plat, but none to the first.

Sometime thereafter, the city, evidently relying upon the unrecorded plat, proceeded to lay a water main along a street which had been shown on the unrecorded plat. The plaintiff sought to enjoin the city from entering upon his property. The city answered, pleading the dedication of the street by the unrecorded plat, to which claim the plaintiff interposed certain defenses to which the trial court sustained a demurrer. On appeal, this court held that the demurrer was improperly sustained, and that the evidence offered by the plaintiff should have been received. The case turned largely upon the question of constructive notice, but it is of interest in connection with the question of the effect, if any, upon the preparation of a plat of land which was never recorded.

In a proceeding *in rem*, such as a tax foreclosure by a county, jurisdiction of the *res* must clearly appear. Property sought to be foreclosed should be so described as to admit of its identification by recourse to official records, or at least by some means which may be referred to as common or general knowledge, concerning which accurate information may be easily obtained. A plat of land may be prepared by a person other than the owner. Land can be replatted several times by such unrecorded maps, which may be incorrect as to surveys, or based on no survey at all, and misleading in other particulars. Of course, if a person interested had persistently sought the plat here in question, it might eventually have been located in the assessor's office, and the assessor might have informed the investigator that the plat had been used in making up the tax rolls, but, in our opinion, this is not, for the purposes of tax foreclosure, a sufficient basis upon which to proceed, in order to confer jurisdiction upon the court to proceed against the property.

We are not informed as to how the record title to the

property in question stands, as disclosed by the official records of the county; whether the property has ever been legally platted in any form, we do not know. It stands admitted that the late Fred S. Gilbert owned the property in question, and that it now belongs to his estate. Further than that, we have no information.

The case of *Larsen v. Dillenschneider*, 235 Mass. 56, 126 N. E. 363, is cited in support of appellant's contention. In that case, the supreme judicial court of Massachusetts, in a proceeding instituted for the registration of title to land, held the following description sufficient to support a tax title:

" 'South side of Harvey Street, a parcel of land with the buildings thereon being lot No. 7 on Block Plan No. 269 dated April, 1897, in the office of the assessors of the City of Cambridge, and containing 4810 square feet.' "

No other description of the land was contained in the tax foreclosure, and the plan referred to in the description was not of record in the registry of deeds. Whether the tax foreclosure under the laws of Massachusetts was of such a nature as this court has held to be a proceeding *in rem*, does not appear. It was held that the description of the property was sufficient, as the reference to the plan referred to it as being in the assessor's office, and afforded an easy method of obtaining an exact description of the property.

If it appeared in the case at bar that, in the tax foreclosure proceeding, notice had been given in the property description that the plat of Gilbert's Avion City was on file in the office of the county assessor, a different question might be here presented, concerning which we express no opinion, but certainly the description which was held good in the case cited was far more definite than that found in the record before us.

In the case of *People ex rel. Kochersperger v. Clifford,* 166 Ill. 165, 46 N. E. 770, the supreme court of Illinois, on appeal from the judgment of the county court, sustaining objections to an application by the county collector for judgment of sale for an unpaid installment of a special assessment, held that no judgment for taxes or special assessments could be rendered against property described as lots upon a plat which had never been recorded. It appeared that, while the · plat had been formally approved by the municipal authorities, it had never been recorded by the owners of the property. The court called attention to the fact that, at any time before the recording of the plat, the owners had a right to withdraw the same, or to make another and different plat of the land.

As above stated, the general rule is that, in order to divest the owner's title through a tax foreclosure, the property must be identified in the proceedings and described with reasonable certainty, so that a person of ordinary intelligence, from an examination of the foreclosure proceedings, could locate the property sought to be foreclosed.

In the case at bar, the tax foreclosure proceedings afforded no sufficient means of locating the property, nor did they convey any information as to how the property might be located. The foreclosure was an action *in rem,* and the mere reference to an unrecorded plat was insufficient to vest the court with jurisdiction to proceed.

The judgment appealed from is affirmed.

STEINERT, BLAKE, MILLARD, SIMPSON, JEFFERS, DRIVER, and MAIN, JJ., concur.

ROBINSON, C. J., dissents.