[No. 29621. Department One. July 13, 1945.]

LEO L. WINGARD, *Appellant*, v. PIERCE COUNTY, *Respondent*, THE TOWN OF RUSTON, *Defendant*.[1]

[1]Reported in 160 P. (2d) 1009.

*A. L. Garnes* and *J. Peter P. Healy,* for appellant.

*Thor C. Tollefson, Theo. L. DeBord,* and *Earl D. Mann,* for respondent.

STEINERT, J.—Plaintiff brought suit against Pierce county and the town of Ruston, seeking to have his alleged title to certain lands quieted as against any and all claims of the county and of the town. Each of the defendants demurred to the complaint. The demurrer of the town of Ruston was sustained, and no further steps have been taken in this action against that particular municipality. The demurrer of Pierce county was overruled, whereupon the county answered by way of a general denial and a cross-complaint praying that the title to the property be quieted in the county as against the plaintiff and all persons claiming by, through, or under him. The reply of the plaintiff joined issue upon the cross-complaint.

The cause was tried to the court without a jury. At the conclusion of the trial, the court took the matter under ad-

visement and, later, filed a memorandum decision directing judgment in favor of the defendant Pierce county. Thereafter, the court made written findings of fact and conclusions of law, and thereupon entered judgment dismissing plaintiff's action and quieting title to the property in the county. Plaintiff appealed.

The property involved in this action consists of several tracts of land, separated from each other but located in the same general vicinity, all of them being situated within the town of Ruston, in Pierce county. These tracts were acquired by Lemuel J. Wingard, appellant's father, through various deeds of conveyance during the period between 1912 and 1923. Portions of one of the tracts appear to have been conveyed by Lemuel J. Wingard to the town of Ruston in 1923, presumably for street purposes.

Taxes for the years 1931 and 1932 were duly levied on lands standing of record in the name of Lemuel J. Wingard and including the tracts involved in this controversy, and, thereafter, these taxes, not having been paid within the required time, became delinquent. In 1933, which was after the taxes had become a lien on the lands, Lemuel J. Wingard conveyed certain other portions of the various tracts to the town of Ruston, to be used for streets and highways.

In June, 1940, more than five years after the taxes for 1931 and 1932 had become delinquent, the treasurer of Pierce county issued to the county a certificate of such delinquency. The certificate showed the lands above mentioned as being owned by Lemuel J. Wingard. In that same month, the county commenced a foreclosure proceeding upon the certificate of delinquency. Notice was published as required by law, and in August a judgment of foreclosure was entered. During the time the foreclosure proceeding was in progress, the lands here involved were unoccupied and unimproved.

Pursuant to the judgment of foreclosure, the property was offered for sale, in the manner provided by law, and, there being no other bidder than the county, the lands were struck off to it, in satisfaction of its tax lien and judgment. Shortly thereafter, the county was given a deed to the property.

In December, 1942, and January, 1943, respectively, Lemuel J. Wingard executed two deeds in which he conveyed the property here in question to his son, Leo L. Wingard, the plaintiff and appellant herein. The deeds, which were given in consideration of love and affection, and one dollar cash, expressly exempted from their covenants of warranty all unpaid taxes, the grantee assuming and agreeing to pay them. Appellant knew, at least as early as 1941, that the tax foreclosure proceeding had been pressed to its conclusion, for in that year he redeemed two pieces of property which had been included in that same proceeding.

It further appears that, in the latter part of 1942 or the early part of 1943, the Federal government entered into an agreement or arrangement with the town of Ruston or with Pierce county, or with both, the object of which was the establishment of a housing project upon certain lands in Ruston, including a portion of the lands involved in this action. Pursuant to that agreement and at the conclusion of certain legal proceedings which seem to have been taken in connection therewith, the Federal government ultimately constructed a number of buildings on the property in 1943. Appellant, having in the meantime received from his father the two deeds above mentioned, and being aware that the housing project was in process of construction, attempted to buy from the county the lands which it had acquired under the foreclosure proceeding. The county, having already entered into an agreement with the Federal government with reference to the property, declined to deal with the appellant. Thereupon, in August, 1943, appellant instituted this action to set aside the tax foreclosure proceeding and quiet title to the property in himself.

Appellant contends that, in entering judgment quieting title to the lands in Pierce county and refusing to quiet the title thereto in him, the trial court erred, in that it included in such judgment certain lands which were not designated in the notice given in the tax foreclosure proceeding but, on the contrary, were expressly excluded therefrom, and further erred in that the court brought into the judgment

certain other tracts erroneously described in, or else omitted from, the notice in the foreclosure proceeding.

The statement of facts in this case, consisting of seventy pages, is devoted almost entirely to (1) a recital, by the appellant, of the descriptions contained in ten deeds through which he deraigned his title, and (2) the testimony of various witnesses who, with the aid of four maps or plats, sought to identify those descriptions and either harmonize them with, or distinguish them from, the descriptions contained in the tax foreclosure proceeding, which latter descriptions were likewise sought to be identified upon the maps. All of those descriptions had reference to lands within the town of Ruston.

We regret to say that the statement of facts is unintelligible, and almost worthless, to us, because the witnesses in locating upon the maps corresponding points and distances described in the deeds and in the tax foreclosure proceeding constantly used the words "here (indicating)," "from here to here (indicating)," and similar expressions, which no doubt were perfectly clear and intelligible to the trial judge, who observed the witnesses as they pointed out the locations, but to us, who have only the typewritten record, such expressions without any identifying marks upon the maps are meaningless. We have spent considerable time in an effort to figure out what the witnesses meant, but have met with little success.

We have, however, in the record the trial court's memorandum decision and also its findings of fact, and these have been of considerable aid to us, particularly under the circumstances to which reference has just been made.

■■ We realize that this is an equity case, and that in such cases findings of fact are not required; also, that on appeal such cases are tried *de novo* and that in its consideration of the particular case this court is required to make an independent examination of all the evidence and all of the circumstances disclosed by the statement of facts, and from such examination decide what findings should have been made. *Columbia Lbr. Co. v. Bush*, 13 Wn. (2d) 657, 126 P. (2d) 584.

It is equally true, however, as declared in the case just cited, that even though findings of fact are not required in equity cases, yet if they are made by the trial court, they will be considered and given great weight, if the statement of facts is included in the record on appeal. As further stated in the opinion in that case:

"In the situation, however, where the evidence is conflicting or appears to be evenly balanced, the findings of the trial court will not usually be disturbed. [Citing a long list of cases in support of this statement.]"

The findings in the present instance are valuable to us not only because the evidence appears to be in conflict and at least equally balanced so far as the respondent is concerned, but also because, as stated before, the statement of facts, of itself, is in large part unintelligible to us. Of equal, and possibly of greater, value to us in this instance is the trial court's memorandum decision, referred to in its findings of fact, in which memorandum the trial court expresses at length its views concerning the various descriptions here involved and their sufficiency in law and fact.

The various parcels of land involved in this action have metes and bounds descriptions, but at various places in the record, and for ready reference, are spoken of as being located in diagrams $1^2$, $1^5$, $1^{36}$ and $1^{37}$ of the town of Ruston. In his brief, appellant refers to each of these diagrams, serially, and points out what he considers to be errors in description. Without specifically setting forth at length each specific error as claimed by the appellant, we may say that as a whole they include generally the following contentions: (a) that some of the descriptions in the foreclosure proceeding include lands which had theretofore been conveyed by appellant's grantor to the town of Ruston; (b) that other descriptions leave out certain portions of the lands here involved, and hence those portions were not affected by the foreclosure proceeding; and (c) that certain descriptions were erroneous, inaccurate, and misleading.

The trial court, in its memorandum decision, discussed and disposed of each of appellant's claims respecting the descriptions of the lands in the various diagrams, and cited

the legal authorities on which the court relied for its conclusions. We are in accord with the views expressed by the trial court, and what we have to say here is for the most part in elaboration of what was said by that court in its memorandum decision or stated in its findings of fact.

■ With respect to appellant's contention that the foreclosure proceeding included certain lands which had been previously conveyed by appellant's grantor to the town of Ruston for street purposes, two answers may be made: (1) As to those portions of land conveyed to the town in the year 1933, the lien for the 1931 and 1932 taxes had fully attached at the time of such conveyance, and therefore, so far at least as the appellant was concerned, the property was subject to the lien for such taxes (Rem. Rev. Stat., §11265 [P. P. C. § 979-493]), although so far as the town of Ruston was concerned, the lien for those taxes may have been unenforcible because it had been discharged upon the acquisition of the property by the town or had become merged in the title acquired by that municipality (*Halvorsen v. Pacific County*, 22 Wn. (2d) 532, 156 P. (2d) 907); (2) in any event, and as to all the lands which appellant's grantor may have conveyed to the town of Ruston, appellant is in no position to make complaint in this action. That would be an issue solely between Pierce county and the town of Ruston, in which the appellant would have no interest whatever. As the trial court properly said, in its memorandum decision:

"The court is not called upon to determine the legality, sufficiency or propriety of the County's foreclosure against the streets or alleys contained in the property theretofore deeded to the City of Ruston [by appellant's grantor]."

So far as this case is concerned, there is no controversy between the respondent county and the town of Ruston.

With reference to the descriptions of those lands which are located in diagram 1[2], the court found that appellant had no valid complaint. Upon examination of the exhibits in the case, and after making as careful a study and check of those particular descriptions as is possible under the state of the record, we have come to the same conclusion

as did the trial court. It would serve no useful purpose to set forth at length the detailed descriptions of these lands, and we therefore deem it sufficient to say here that the descriptions used by the county in the tax foreclosure proceeding were sufficient to identify the lands owned by appellant in diagram $1^2$.

With reference to the lands located in diagrams $1^5$, $1^{36}$, and $1^{37}$, the trial court seems to have recognized that some portions of the descriptions were not as full or as definite as they might have been. However, after analyzing the testimony and closely examining the exhibits, including the deeds, maps, and files in the foreclosure proceeding, the trial court came to the conclusion that neither the appellant nor his predecessor in interest could have been misled by the descriptions; that a prospective purchaser would not be deceived thereby; and that a proper deed could be executed covering the property foreclosed in the tax foreclosure proceeding. The court pointed out that, from the descriptions used by the county in the foreclosure proceeding, the owner of the property, appellant's father and predecessor in interest, must readily have understood that all of the property in those tracts owned by him, except such as he had conveyed to the town of Ruston for streets and alleys, was being foreclosed in the tax foreclosure proceeding. The trial court made an express finding:

"That all of the descriptions used by the county, where exceptions were carved out, referred to the excepted portions as either streets or alleys, and it could be readily ascertained where the streets or alleys in each tract respectively were located."

■ Since appellant was asserting the invalidity of the deed given to the county under the tax foreclosure proceeding, the burden was upon him to overcome the deed by competent and controlling evidence. *Sparks v. Standard Lbr. Co.*, 92 Wash. 584, 159 Pac. 812; *Larson v. Murphy,* 105 Wash. 36, 177 Pac. 657; *Chase v. Carney,* 199 Wash. 99, 90 P. (2d) 286.

Whether the descriptions used in the tax foreclosure proceeding were sufficient, was a mixed question of fact and of

law. The trial court found against the appellant upon the factual phase, and from our study of the record we are not disposed to disturb the findings.

■ The law bearing upon the question is not here disputed. Indeed, respective counsel cite virtually the same authorities in support of their contentions. The general rule is that, in order to divest the owner's title through a tax foreclosure, the property must be identified in the proceedings and described with reasonable certainty, so that a person of ordinary intelligence could, from an examination of the foreclosure proceedings, locate the property sought to be foreclosed. *Napier v. Runkel,* 9 Wn. (2d) 246, 114 P. (2d) 534, 137 A. L. R. 175, wherein the preceding cases from this court are analyzed and considered.

Conversely, if the description affords an intelligent means of identifying the property and does not mislead, it is sufficient. *Ontario Land Co. v. Yordy,* 44 Wash. 239, 87 Pac. 257; *Stanchfield v. Blessing,* 55 Wash. 620, 104 Pac. 800; *Lara v. Peterson,* 56 Wash. 70, 105 Pac. 160; *Old Republic Mining Co. v. Ferry County,* 69 Wash. 600, 125 Pac. 1018; *Continental Distributing Co. v. Smith,* 74 Wash. 10, 132 Pac. 631; *Merges v. Adams,* 137 Wash. 208, 242 Pac. 43; Accord: *McMurren v. Miller,* 158 Wash. 284, 290 Pac. 879; *Napier v. Runkel, supra.*

The following excerpt, taken from the *Yordy* case, *supra,* has been frequently quoted and restated by this court and may well bear repeating as the law applicable to the case before us:

"It is a well-established principle of law that a description in a deed, or other instrument affecting title to real estate, is sufficient if it affords an intelligent means for identifying the property, and does not mislead. In other words, if a person of ordinary intelligence and understanding can successfully use the description in an attempt to locate and identify the particular property sought to be conveyed, the description answers its purpose and must be held sufficient. Mr. Jones, at section 323 of his treatise on the Law of Real Property in Conveyancing, says:

" 'The first requisite of an adequate description is that the land shall be identified with reasonable certainty, but the

degree of certainty required is always qualified by the application of the rule that that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the means of identification. The description will be liberally construed to afford the basis of a valid grant. It is only when it remains a matter of conjecture what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels.'

"When real estate is listed and assessed for taxation, it is ordinarily necessary that the assessment roll shall contain a reasonably accurate description of the tract sought to be taxed. The object of this requirement is stated by writers on taxation and tax titles to be three-fold, (1) it is designed to inform the owner of the claim upon his property; (2) it is designed that intending purchasers may know what property will be offered for sale in the event of the taxes becoming delinquent; and (3) it is also the intention that under such description a proper deed may be executed to the purchaser. Cooley. Taxation (2d ed.), p. 405; Black, Tax Titles (2d ed.), § 112."

A study of the record convinces us, as it convinced the trial court, that the descriptions contained in the foreclosure proceeding afforded the owner of the property, or any person of ordinary intellectual capacity, an intelligent means for identifying the property, without being misled. As the trial court aptly said in its memorandum decision:

"All of the descriptions used by the County, where exceptions were carved out, referred to the excepted portions either as streets or alleys, and anyone going upon the ground or examining the records of plats in the Assessor's office could readily ascertain where the streets or alleys in each tract respectively were located."

In our opinion, the same thing could be said of the descriptions in their entirety.

There is no equity favoring the appellant in this case. The property was a gift to him from his father and was consummated long after the county had acquired the title

through the tax foreclosure proceeding. Appellant well knew that there were unpaid taxes against it, which he assumed and agreed to pay. Those taxes had been delinquent for seven or eight years at the time the foreclosure proceeding was commenced. Apparently neither the appellant nor his father thought these particular lands were worth redeeming from the tax sale, for the appellant did redeem other lands from the same tax foreclosure. It is evident that what made the lands ultimately attractive to the appellant was the fact that the Federal government had recently begun to use and improve them by constructing thereon a housing project. Not until then did the appellant or his predecessor in interest do anything toward paying the taxes on the property or manifest any concern about its ownership. There is no element of lack of knowledge, misunderstanding, overreaching, or any other factor exerting a strong appeal upon a court of equity. It is simply a case of an owner virtually abandoning his property by failing to pay the taxes and then endeavoring to regain it after it has been foreclosed and sold, and after it has suddenly become valuable by reason of some fortuitous set of circumstances. This is not the kind of situation in which the assistance of a court of equity is to be successfully invoked.

The judgment is affirmed.

BEALS, C. J., SIMPSON, JEFFERS, and GRADY, JJ., concur.