[No. 10003.   Department One.   August 15, 1912.]

MARY M. BROWN, *Respondent*, v. THE CITY OF BREMERTON,
*Appellant*.[1]

DEEDS — DESCRIPTION — BOUNDARIES — RESERVATIONS — INTENT
—CONSTRUCTION BY PARTIES.   A deed of land by metes and bounds
including calls "to the harbor limit" and "parallel to said harbor
line," which reserves a strip of land thirty feet wide off the north-
east corner for a distance of 148.3 feet for the purpose of a public
road, must be taken to convey to the inner shore or high water
line, and not to the meander line, which was about 100 feet dis-
tant where the water was from four to eight feet deep at high
water, especially where the strip at high water mark had been used
as a roadway for several years prior to the execution of the deed,
and was thereafter used by the public continuously as a road for
more than ten years prior to the commencement of the action.

DEEDS—CONSTRUCTION—INTENT—EXTRINSIC EVIDENCE.   The fact
that a common grantor in his last deed reserved a strip of land
thirty feet wide along the meander line for a public road, does not
show that a like reservation in a deed of a contiguous tract made six
years previously of thirty feet "along the shore line" was intended
to mean along the meander line.

QUIETING TITLE—TITLE OF PLAINTIFF.   In a suit to quiet title,
the plaintiff must prevail, if at all, on the strength of her own title.

Appeal from a judgment of the superior court for Kitsap
county, Still, J., entered October 20, 1911, in favor of the
plaintiff, after a trial on the merits before the court, in an
action to quiet title.   Reversed.

*F. W. Moore*, for appellant.

*J. W. Bryan*, for respondent.

GOSE, J.—This is an action to quiet title.   There was a
decree for the plaintiff.   The city has appealed.

In August, 1900, Warren Smith and his wife conveyed to
the respondent a tract of land by metes and bounds, contain-

[1]Reported in 125 Pac. 785.

ing 3.60 acres.    The deed contained the following reservation clause:

"Reserving and excepting a strip of land thirty (30) feet in width off of and along the northeast corner of said above described tract of land for a distance of one hundred and forty-eight and three-tenths (148.3) feet; said reserved strip of land along the shore line of the above described tract of land being for the purpose of a public road and outlet to grantee over same."

There is a call in the deed "to the harbor limit," and another call "parallel to said harbor line." The inner shore line or line of ordinary high tide is not coincident with the government meander line. At ordinary high tide the water is from six to eight feet in depth at the latter line. The inner shore line is approximately 100 feet from the meander line, and the outer shore line or line of ordinary low tide is from two to three hundred feet distant from the latter line. The tract of land in controversy follows approximately the inner shore line. The court found that the reserved strip of land followed the meander line. The appellant contends that it follows the inner shore line. Measured upon the meander line, the distance call in the deed—148.3 feet—is correct. The inner shore line is approximately 39 feet longer.

It is manifest from the facts stated that the respondent's grantor only had title to one shore line, viz., the inner one. The meander line lies between the two shore lines. If the respondent's grantors intended to use the words "harbor limit" and "harbor line" as the equivalent of meander line, it seems certain that they used the words "along the shore line" advisedly and as meaning the inner shore line. If they intended to carry the description beyond the meander line, the same conclusion must follow. The reservation was made, as it recites, for the purpose of a public road. It is manifest that the grantors were not reserving a road upon the meander line where the water has a depth of from four to eight feet at

ordinary high tide.    It was their intention to reserve a
usable roadway.    Moreover, the evidence shows that the strip
of land in question had been used for several years prior to
the execution of the respondent's deed as a roadway; that it
connected with a public resort which the respondent's grant-
ors were then carrying on; that they continued to use it until
the decease of Warren Smith, which occurred in 1907 or
1908; that they expended money in keeping it in repair, and
claimed it as a roadway.

Evidence was offered by the respondent to the effect that
Warren Smith in his lifetime offered the roadway to the city
if it would agree to maintain a bridge which spans a depres-
sion therein.    The record shows conclusively that Smith, up
to the time of his death, treated the tract in question as con-
forming to the reservation, and we think it is equally clear
that the respondent, up to that time, entertained the same
view.    In May, 1909, the respondent leased a part of her
land along the meander line for the term of three years, with
an option of purchase to the lessee.    This action was com-
menced in June, 1909.    A short time before the commence-
ment of the action, the respondent caused an obstruction to
be placed across the road, which was immediately removed
by the appellant.    Aside from this obstruction, the roadway
had been open and traveled by the public continuously for
more than ten years when the action was commenced.    In
February, 1906, Smith and wife conveyed to a third party
a tract of land adjoining the respondent's land and border-
ing upon the meander line, reserving a strip of land thirty
feet in width along the government meander line to be used
for a public highway.    The respondent argues that this deed
is corroborative of her contention that the strip reserved in
her deed also followed that line.    The fact that the later
reservation is along the meander line does not tend to show
that the words "along the shore line" in the earlier reserva-
tion mean along the meander line.

It is familiar law that parol testimony is admissible to

show the circumstances under which a deed was made, to define technical terms, or to explain latent ambiguities. 4 Am. & Eng. Ency. Law (2d ed.), p. 795; *Sengfelder v. Hall*, 21 Wash. 371, 58 Pac. 250.

"The court must place itself as nearly as possible in the situation of the contracting parties at the time the deed was made, in order to ascertain their intent. The grant is to be construed with reference to the actual rightful state of the property at the time of the execution, and the law assumes that the parties refer to this for a definition of the terms made use of in their deed, and that they are least liable to make a mistake." 4 Am. & Eng. Ency. Law (2d ed.), p. 796, subd. 3.

The respondent must prevail, if she prevail at all, upon the strength of her own title. She cannot recover upon the weakness of her adversary's title. *Hughes v. South Bay School Dist. No. 11*, 32 Wash. 678, 73 Pac. 778, 74 Pac. 333; *George v. Columbia & Puget Sound R. Co.*, 38 Wash. 480, 80 Pac. 767; *Helm v. Johnson*, 40 Wash. 420, 82 Pac. 402.

To summarize, the respondent's grantors owned but one shore line. The reservation was made for a roadway, and the conduct of the parties to the instrument, together with the physical facts stated, makes it certain that the property in question is the property which the grantors intended to reserve and which the grantee understood was reserved.

The appellant contends that the strip of land in controversy is a public street, both by dedication and by prescription. The view we take of the case eliminates this issue. That question can only be determined in a suit between the proper parties. The respondent is without title and her suit must fail.

The judgment is reversed, with directions to dismiss the action.

Parker, Crow, and Chadwick, JJ., concur.