[No. 14524. Department Two. April 30, 1918.]

# E. F. WHITAKER et al., Appellants, v. JOHN H. ELLIS, Respondent.[1]

INSANE PERSONS—ACTIONS AGAINST—DEFENSES—PLEADING. Purchasers at a tax sale and sale under execution of property of an incompetent person, suing to quiet title, must recover on the strength of their own title; hence defendant's guardian ad litem, may rely on general denials without pleading affirmative defenses.

APPEAL—REVIEW—HARMLESS ERROR — TECHNICALITIES. Where a case was fully tried on denials, error cannot be predicated upon defendant's failure to plead his affirmative defenses, as the objection is technical, and under Rem. Code, § 307, must be disregarded.

TAXATION—TAX SALES—BONA FIDE PURCHASER — INSANE PERSON. Where property of an insane person was bid in at tax and execution sales, pursuant to negotiations between the insane person and persons who were bound to pay the taxes, who procured friends to bid in the property at much less than it was worth, and caused the same to be transferred to another friend who knew the entire situation, the latter was not a purchaser in good faith, and could acquire no rights by virtue of the negotiations had with the insane person.

TAXATION—TAX SALES—PROPERTY OF INSANE PERSON — REDEMPTION—REIMBURSEMENT OF PURCHASER. Persons bidding in the property of an insane person at tax sale, under unwarranted negotiations with the insane owner, while unable to hold the land, are entitled, in an equitable suit, to be reimbursed for the amount of the taxes paid; especially in view of Rem. Code, § 9259, relating to the redemption of the lands of insane persons sold for the nonpayment of taxes by the reimbursement of the purchaser.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered June 4, 1917, in favor of the defendant, dismissing an action to quiet title, tried to the court. Reversed conditionally.

Roberts & Udell, for appellants.

John F. Chesterley, for respondent.

CHADWICK, J.—John H. Ellis was committed to the hospital for the insane in 1895, again in 1897, and

[1]Reported in 172 Pac. 881.

again in 1898. In each instance he was discharged as "improved." This means, according to the letters of the superintendent of the hospital, which were introduced in evidence, that one so discharged is not necessarily cured, but may be so improved as not to be dangerous to go at large. Ellis was discharged the last time in 1902. In November, 1916, N. H. Massie, a brother-in-law of the plaintiff, filed a complaint charging Ellis with being an insane person. He was examined by a number of physicians, who made findings that he was "not insane necessarily, but incapable of looking after himself. We recommend a guardian be appointed by the court; mentally below par." The witnesses describe Ellis variously as "sane," "insane," "queer," "off," and "cracked." That he meets up with some of these descriptions, we have no doubt. The trial judge found him to have been at all times material to this inquiry a paranoiac and unfit to attend to his own business. It will be unnecessary to review the evidence. We are satisfied that a preponderance of the evidence is with the defendant upon this issue.

Ellis was the owner of eighty acres of land which he contracted to sell to N. H. Massie, a brother-in-law of plaintiff, in 1912 for a consideration of $8,000. Massie paid $150 down and made a mortgage for $7,850 to secure the remainder. Massie paid no more than $300 on the interest, and no taxes whatever, although he had the full legal and equitable title, subject only to the lien of the mortgage. At the time of the sale, the last half of the 1911 taxes were due and unpaid, and they were not thereafter paid by Ellis or Massie. Massie, being unable or unwilling to meet the payments due upon his mortgage, proposed a reconveyance of the land. Out of the negotiations of the parties, Ellis agreed to remit the sum of $500 upon condition that Massie would retain the land and plant forty acres to

orchard. This he did. In the summer of 1916, Massie had an understanding with plaintiff Whitaker that he, Whitaker, would buy the land if he could get it for $2,000 or less. A foreclosure proceeding had been brought by one Huston, who had theretofore taken out certificates of delinquency. Massie borrowed the money of Mr. Heath's bank to pay the amount due at the time of sale and procured Mr. Heath to bid in the land. The sale occurred on July 29, 1916, and on the very next day Mr. Heath conveyed the land by quit-claim deed to plaintiff. The tax sale did not cover all of the land. There were two small fractional pieces that were not included. The John Deere Plow Company had theretofore obtained a judgment against Ellis. Massie solicited a friend in the east to buy this judgment, and in order to make title to all of the land, including the part not included in the tax sale, he caused an execution to issue, and the land was sold in September, 1916, and bid in by Mr. Heath. The money to pay this judgment was borrowed of the bank upon the note of Massie. In April, 1916, after Massie had notice of the pendency of the tax foreclosure proceeding, he took up the matter of reconveying the land to Ellis, and it was agreed that Ellis would take the land back. Massie executed a deed in April. About ten days before the tax sale, or about the 20th of July, he left it at the bank for Ellis. We are not entirely satisfied that the testimony shows a legal delivery, but we shall assume that it was. The note and mortgage were surrendered, but they were never canceled of record. On January 6, 1917, Heath assigned his certificate of sale to plaintiff. Plaintiff then put the certificate and the deed, which had been executed by Mr. Heath in July, of record, and on February 3d began this action to quiet his title. He set up his ownership of the land, that the mortgage was outstanding and unsatisfied, and

that Ellis persisted in claiming to be the owner of the land. Ellis made default, after which counsel for plaintiff moved that the default be opened and a guardian *ad litem* appointed for the reason:

"That the mind of the defendant John H. Ellis may have become deranged by reason of the loss of his property through legal proceedings, so that he is in need of the care and attention of a guardian *ad litem,* and that no general guardian has been appointed."

Mr. John F. Chesterley was accordingly appointed guardian *ad litem,* and set up two defenses: first, that Ellis was at all times so insane and so mentally incompetent that his estate would not be bound by the tax judgment and sale, and that Whitaker was not an innocent purchaser for value of the land; and second, that the plaintiff and Massie were legally bound to pay all the taxes, that they conspired to bring about the tax foreclosure proceeding by the nonpayment of the taxes, and that they conspired to defeat the title and interest of Ellis by purchasing, through the intervention of an agent, the outstanding judgment, and afterwards caused the property to be sold on execution and bid in by another acting for them, all for the purpose and with the intent of defeating the lien of the mortgage theretofore made by Massie. The court found that Ellis was at all times mentally irresponsible, and refused to grant the relief prayed for.

Counsel first insist that the decree of the court should be reversed because the guardian *ad litem* did not plead any affirmative defenses, nor did he ask any affirmative relief by way of cross-complaint. It is complained that the method pursued by the guardian *ad litem* is a collateral attack, and that he should have filed a cross-complaint so as to bring the issue before the court directly. It is hard for us to follow the reasoning of counsel. It was the duty of the guardian *ad*

*litem* to hold plaintiff to strict proof, and this could be done by a general denial, for whatever presumptions attend the record title of plaintiff, when he began his action to quiet title he opened all the doors of equity, for, as in ejectment, he must recover upon the strength of his own title, and not upon the weakness of that of his adversary. *Brown v. Bremerton,* 69 Wash. 474, 125 Pac. 785. Moreover, the case has been tried and all the facts have been put before the court, and we could not send a case back for a retrial upon an objection which, in the light of the whole record, has become technical. Under the statute, Rem. Code, § 307, we are warranted in treating the defenses as affirmative defenses.

Plaintiff is brother-in-law and friend of Massie, and a friend and neighbor of Ellis. He knew the situation, he knew that Massie was legally and morally bound to pay the taxes accruing since 1911. He offered, himself, or was persuaded, to be a purchaser of the land if it could be bought for $2,000 or less, knowing that it could not be so bought unless the mortgage of $7,850 was paid off or disposed of in some other way. On the very next day after the property had been bought in by Mr. Heath, he accepted a deed from Heath, the consideration being the amount paid at the sale and no more; although he was charged with a knowledge of the law and the fact that the tax title destroyed all other titles, and that the owner of the land, granting that Mr. Heath was the owner of it, was in a position to convey the full title, presumptively, at least, and was entitled to receive a full or fair value, he did not put his deed of record until after the property had been again sold under the execution thereafter issued on the John Deere Plow Company judgment, showing clearly that the second sale was procured for no other purpose than to aid the tax title, and in pursuance of the pur-

pose of plaintiff to buy, and of Massie to procure the land for him, for a sum less than $2,000, and at the same time discharge his own obligation.

Plaintiff was not a purchaser in good faith and can claim no title in virtue of the negotiations had between Ellis and Massie, or in virtue of the execution sale; but it does not follow that the tax title is void, or that plaintiff is to be barred of his legal rights because his case is wanting in equity. The land was subject to the taxes levied upon it. The property of persons laboring under a disability is subject to taxation as is other property, unless it is exempted by statute.

"The fact that land belongs to a person who is under legal disabilities, as a minor or a feme covert, does not prevent the sale of the same for the non-payment of taxes assessed against it, nor will it prevent the title to the same from passing by a tax deed issued pursuant to such sale. It is true that the statutes almost invariably allow to persons so circumstanced a sufficient period after the removal of the disability, within which to exercise the right of redemption from a tax sale." Black, Tax Titles (2d ed.), p. 334, § 270.

Our statute provides for the redemption of the property of an insane person when sold for taxes.

"If the real property of any minor heir, or any insane person, be sold for nonpayment of taxes or assessments, the same may be redeemed at any time after sale and before the expiration of one year after such disability has been removed upon the terms specified in this section on the payment of interest at the rate of twelve per cent per annum on the amount for which the same was sold, from and after the date of sale, and in addition the redemptioner shall pay the reasonable value of all improvements made in good faith on the property, less the value of the use thereof, which redemption may be made by themselves or any person in their behalf." Rem. Code, § 9259; as amended Laws 1917, p. 586.

We are willing to subscribe to the decree of the lower court in so far as it holds that all contracts made with Ellis in the carrying out of the plan to get title to the land are voidable, but we cannot deny plaintiff the right which the statute gives him, that is, a right to be reimbursed for the amount of taxes that he has paid out. At the time this action was begun, Ellis had a right under the statute to redeem, and plaintiff, having asked for equity, should be content with no less than equity. The equities of the case demand that Ellis be now given an opportunity to redeem.

It is said in the brief, although it is no part of the record, that a general guardian has been appointed for the defendant. If this be not so, we suggest that, upon the going down of the remittitur, a guardian be appointed; that he be made a party to this action, and that he be given the privilege of redeeming the land upon the payment of the amount which plaintiff paid upon the tax sale and interest (Rem. Code, § 9259), and the amount that plaintiff paid for the judgment of the John Deere Plow Company, with interest at six per cent per annum from the time of payment until redemption.

We do not direct a redemption; we leave this question to the judgment of the general guardian, subject, of course, to the approval and order of the court below. If a redemption is not made within ninety days after the remittitur goes down, the judgment will be reversed. Appellant will recover his costs in this court.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.