[No. 24095. Department Two. March 28, 1933.]

E. J. ROHRBACH et al., *Appellants*, v. HENRY SANSTROM et al., *Respondents*.[1]

*Charles W. Johnson (The Attorney General* and *Lester T. Parker,* of counsel), for appellants.

*Hugo E. Oswald (Edgar Anderson,* of counsel), for respondents.

STEINERT, J.—Plaintiffs instituted this action to quiet title to certain tide lands fronting a government lot on Puget Sound, claiming title thereto by virtue of a deed from the state of Washington, dated September 18, 1928. Defendants assert title to a three-fifths interest in the lands under a patent from the United States and a chain of mesne conveyances. The patent was issued January 18, 1890, following the issuance of a receiver's receipt dated August 10, 1888.

[1]Reported in 20 P. (2d) 28.

It is undisputed that, by similar mesne conveyances based upon the same patent, plaintiffs are entitled to a two-fifths interest in these lands. The controversy, therefore, affects only the three-fifths interest claimed by defendants. The trial court held adversely to plaintiffs, dismissing their complaint. This appeal followed.

The government survey affecting the lands was made about seventy-five years ago. Compared with the sinuosities of the present shore line, the meander line, according to the government field notes, presents a striking variance. At certain places, the meander line is now in deep water; at others, it is some distance from the beach. Out of this evident variance arises this controversy.

Appellants first contend that the discrepancies are so glaring as to indicate that no survey was, in fact, ever made. This contention, however, places appellants in an anomalous position, for the reason that the deed from the state to the appellants rests its description of the land therein conveyed on the meander line as surveyed by the government. If there was no meander line established, then appellants' title is void for uncertainty. In an action such as this, appellants must prevail upon the strength of their own title, and not upon the weakness of their adversaries'. *Shelton Logging Co. v. Gosser,* 26 Wash. 126, 66 Pac. 151; *Brown v. Bremerton,* 69 Wash. 474, 125 Pac. 785; *Spokane v. Security Savings Society,* 82 Wash. 91, 143 Pac. 435.

Appellants' second contention is that the government survey is so obviously erroneous and constitutes such a wide departure from the actual condition that it clearly indicates that the meander line could not have been run as shown on the official plat; further, that the state could never have intended to dis-

claim title to its tide lands upon the basis of such a survey. By Art. XVII, § 2 of the constitution, the state of Washington disclaimed all title to tide lands patented by the United States, provided that the same was not impeached for fraud. No actual fraud is here shown, and the only basis for its presumption is that the departure from the present true meander line is so great as to make the conclusion that no survey was ever made inescapeable.

Indicative of the fact that the survey was actually made, we have the disclosure of the government field notes and the record of the survey, which seem to have stood unimpeached for seventy-five years, and with reference to which the state of Washington itself executed its deed to appellants. A government survey is authoritative, and is not open to collateral attack between private parties. *Kneeland v. Korter,* 40 Wash. 359, 82 Pac. 608, 1 L. R. A. (N. S.) 745; *Cragin v. Powell,* 128 U. S. 691; *Russell v. Maxwell Land Grant Co.,* 158 U. S. 253; *Horne v. Smith,* 159 U. S. 40; *United States v. Boynton,* 49 Fed. (2d) 810.

Appellants' third contention is that, even if it be held that a survey was made, its outline should be controlled by natural monuments in preference to courses and distances. It may be true, as a general proposition and where other things are equal, that, in locating the boundaries of land, resort is first had to natural objects, artificial monuments and adjacent boundaries, in the order just expressed, and thereafter to courses and distances. But here, while the government field notes in one or two instances refer generally to high banks and a sandy beach, descriptive of a general locality, no fixed points or monuments thereon are designated.

The survey was made many years ago when the country was new, and when absolute accuracy was not

as essential as it is now. Nor is there any proof in the record that physical conditions then existing have not materially changed since that time. Based upon that survey, which was official, property rights have become vested. These are not to be lightly upset. In this case, the original point is the southwest corner of the fractional government lot, and is definitely known. From thence the survey proceeds regularly by courses and distances, and there is no showing that it does not actually fit into the point of last call. From the standpoint of fact, as well as of law, the survey has not lost that authoritativeness to which it was entitled in its inception.

The respondents, in their brief, advance several affirmative propositions, kindred to those that we have already discussed. Owing to the conclusion that we have reached on appellants' case, it is unnecessary to further notice the matters suggested by respondents.

The judgment is affirmed.

BEALS, C. J., BLAKE, MAIN, and TOLMAN, JJ., concur.