[No. 30328. Department Two. September 10, 1948.]

THE CITY OF CENTRALIA *et al., Respondents,* v. GEORGE MILLER *et al., Defendants,* E. F. NUDD, *Appellant.*[1]

[1]Reported in 197 P. (2d) 244.

*Ray M. Wardall* and *Royce & Royce,* for appellant.

*H. E. Grimm,* for respondents.

STEINERT, J.—Plaintiffs instituted suit to obtain a decree quieting title to certain land alleged to have been acquired by their predecessor in interest through tax foreclosure proceedings. The parties named as defendants herein defaulted. An additional defendant alone appeared in the action by answer, denying the material allegations of the complaint and affirmatively alleging that he was the owner of this land, and that the tax foreclosure proceedings and sale thereunder were void. The prayer of his answer asked that plaintiffs take nothing by their complaint, and that the rights of the additional defendant be declared prior, paramount, and superior to the rights of the plaintiffs and the other defendants in the action. Plaintiffs by reply denied the affirmative allegations of the answer and, further, pleaded the statute of limitations as a bar to any action or claim that the additional defendant might have with reference to the land.

The cause was tried to the court without a jury. A decree was entered quieting title to the property in the plaintiffs as against all of the defendants and the additional defendant, dismissing the answer and affirmative defenses of the additional defendant, and awarding costs against him. The additional defendant alone has appealed.

It is agreed by the parties that the correct description of the land, the title to which respondents sought and are now seeking to have quieted, is, as set forth by metes and bounds in the complaint, as follows:

"Beginning at a point which lies on the center line of Pearl Street and the north line of Center Street, thirty (30) feet north 15° 40¼' east of the intersection of the center lines of said Pearl and Center Streets; thence north 73° 04½' west along the north line of Center Street two hundred six and fifty-six one-hundredths (206.56) feet; thence north 14° 23' east four hundred and sixty-four and fifty-seven hundredths (464.57) feet to the south line of Hanson Street; thence south 69° 30' east along the south line of Hanson Street three hundred thirty-eight and fifty-two hundredths (338.52) feet to the west line of the alley block 2, Hanson's 1st Add. to the City of Centralia, Wash.; thence due south along the west line of said alley one hundred thirty-one and six tenths (131.6) feet; thence south 15° 40½' west along the west line of said alley four hundred thirty-four and eighteen hundredths (434.18) feet to the north line of Center Street; thence north 73° 04½' west along the north line of Center Street one hundred forty-five and fifty-nine hundredths (145.59) feet to the point of beginning; all in the City of Centralia, Lewis County, Wash., containing four and nineteen hundredths (4.19) acres."

Appellant, E. F. Nudd, claims to have acquired this property in 1908 and 1909 by two deeds in which the descriptions of the real estate were somewhat different from that set out in the complaint herein. Since that time, the property has undergone considerable litigation, some of which reached this court about twenty years ago, as shown in *Miller v. Nudd,* 149 Wash. 419, 271 Pac. 80, and *Miller v. Nudd,* 154 Wash. 150, 281 Pac. 333.

From the evidence produced at the trial in the instant case, it appears that in December, 1922, appellant and his wife entered into a written contract with George Miller and W. W. Reagan, in which it was agreed that Miller and Reagan would advance a sum sufficient to pay off an outstanding mortgage on the property amounting to $23,500, and, in consideration of such advancement, the Nudds would sell and transfer an undivided one-third interest in the

property to Miller and a like interest to Reagan. The parties also entered into a contemporaneous oral agreement, by the terms of which the property was to be sold within a reasonable time and a proper division of the proceeds made among the parties. Pursuant to these agreements, the Nudds gave Miller a quitclaim deed to all the property involved in this action, and Miller and Reagan advanced them money to cover the mortgage, and thereafter other sums of money.

Owing to subsequently existing market conditions, the property could not readily be sold within the time prescribed. Sometime thereafter, Miller and Reagan instituted an action to foreclose their lien upon the land for the advancements made by them and to divest the Nudds of any interest they might have or claim in the property. In that action, the trial court determined that the contract between the parties constituted a joint venture and that the Nudds had no further interest in the real estate, but only an interest in any surplus that might be realized from a sale of the property, over and above the amount advanced by Miller and Reagan, which amount the court found to aggregate $38,202.52. The judgment which the trial court entered in that action was affirmed by this court in the first of the two cases cited above.

During the pendency of the appeal in that case, the property was sold under order of the court. That sale was subsequently set aside, however, because of an erroneous date fixed in the order of sale. The error was corrected, and a new order of sale was entered. From that order, appellant herein again appealed to this court, with the result that the order of the trial court was affirmed on October 16, 1929, in the second of the two cases cited above. So far as the record herein discloses, no further steps were ever taken in pursuance of that litigation.

In the meantime, general taxes, which had been levied annually against the property here involved for the period from 1925 to 1929, inclusive, became delinquent. In 1930, the city of Centralia, one of the respondents herein, foreclosed on the property for delinquent municipal assessments, and, at the subsequent sale, the city bought in the property.

In 1936, Lewis county instituted tax foreclosure proceedings against the property for delinquent taxes for the years above mentioned. These proceedings form the basis of respondents' claim of title to the land, and likewise constitute the grounds upon which appellant rests his contention that respondents' claim of title is without legal foundation.

Throughout the tax foreclosure proceedings, in the summons, the complaint, the judgment, and the notice of sale, the property, consisting of two tracts of land lying adjacent to each other, was described as follows:

"Tax Lot 21, a parcel of land lying South of Eastern Land Company's Addition and West of Hanson Addition, Section 5, Township 14 North, Range 2 West of W. M., containing 3.28 acres, more or less, Lewis County, Washington."

and

"Tax Lot 75, a parcel of land known as the Nudd Tract between Hansen and Center Streets, in the Northwest corner, Northeast Quarter of the Northeast Quarter, Section 8, Township 14 North, Range 2 West of W. M., containing 1 acre, more or less, Lewis County, Washington."

At the foreclosure sale, there being no other bidders, the property was struck off to Lewis county. On July 15, 1937, the county executed and delivered two deeds conveying this same property to the respondent city of Centralia. For the one deed, the city paid the sum of $1,627.36, and for the other the sum of $543.12.

During the trial of this action, it was stipulated by and between the parties that the description of the property as shown throughout the tax foreclosure proceedings was the same as that appearing on the assessor's tax rolls and also the same as that given in the two deeds to the city of Centralia. It was further stipulated, during the trial, that appellant had paid no taxes or municipal assessments on the property in question since the year 1931.

Subsequent to the receipt of its two deeds from the county, the city of Centralia, by five bargain and sale deeds, conveyed portions of the property to its corespondents Niles N. Churchill, S. J. Keehnel, Harold R. Williams, V. L. Haner, and Harold J. Dokken, and their respective wives. The

validity of these deeds depends upon that of the deeds issued to the county pursuant to the tax foreclosure proceedings.

Appellant contends that respondents' titles are insufficient to maintain this action, because of inadequate descriptions of property in the tax deeds to the county and in the deeds from the county to the city of Centralia. As reasons for this contention, appellant asserts (1) that a description of the property by reference to tax lot numbers was improper because the assessor's plat and description book did not contain metes and bounds descriptions of the property, as required by Rem. Rev. Stat., § 11137 [P.P.C. § 979-119]; and (2) that the remainder of the description contained in the tax foreclosure proceedings and in the deeds is insufficient to identify the property.

In our consideration of the questions relating to the sufficiency of the titles of the respective respondents, who initiated this action, we shall proceed upon the well-established rule that the plaintiff in an action to quiet title must prevail, if he prevails at all, on the strength of his own title, and not on the weakness of the title of his adversary. *Shelton Logging Co. v. Gosser,* 26 Wash. 126, 66 Pac. 151; *Humphries v. Sorenson,* 33 Wash. 563, 74 Pac. 690; *Brown v. Bremerton,* 69 Wash. 474, 125 Pac. 785; *Whitaker v. Ellis,* 102 Wash. 43, 172 Pac. 881; *Rohrbach v. Sanstrom,* 172 Wash. 405, 20 P. (2d) 28; *Lewis v. Seattle,* 174 Wash. 219, 24 P. (2d) 427, affirmed on rehearing 174 Wash. 226, 27 P. (2d) 1119.

The crucial question in this case, then, is whether the descriptions of the property, as set forth in the tax foreclosure proceedings, also in the tax deeds issued to Lewis county and in the deeds from the county to the city of Centralia, are sufficient to constitute a basis for the foreclosure proceedings and are sufficiently definite to convey to the city of Centralia good title to the property described in the complaint.

Respondents raise a further question, contending that, even though the descriptions be held to be insufficient, nevertheless any action or claim which appellant might have

had with reference to the property is now barred by the limitations of Rem. Rev. Stat., § 162 [P.P.C. § 73-13]; with this latter question, however, we shall not be concerned herein, inasmuch as our decision of the first question, indicated above, will control the disposition of the instant case.

Rem. Rev. Stat., § 11137, quoted and relied upon by both parties in their briefs, in so far as is material here, provides:

"The assessor shall list all real property according to the largest legal subdivision as near as practicable. The assessor shall make out in the plat and description book in numerical order a complete list of all lands or lots subject to taxation, showing the names and owners, if to him known and if unknown, so stated; the number of acres and lots or parts of lots included in each description of property and the value per acre or lot; provided, that the assessor shall give to each tract of land where described by metes and bounds a number, to be designated as Tax No. ——, which said number shall be placed on the tax-rolls to indicate that certain piece of real property bearing such number, and described by metes and bounds in the plat and description book herein mentioned, and it shall not be necessary to enter a description by metes and bounds on the tax-roll of the county, and the assessor's plat and description book shall be kept as a part of the tax collector's records; . . ."

We have quoted this statute for the purpose of showing the routine procedure prescribed for the assessor in the process of listing and assessing real property for taxation. However, it is to be borne in mind that the question with which we are here concerned is not whether the assessor in this instance complied strictly with the requirements of this statute, but rather whether the descriptions of the property as they appear on the assessor's tax rolls and in the tax foreclosure proceedings and deeds are sufficient, under the applicable law, to identify and pass title to the property here in question.

■ The general rule in such matters is that, in order to divest the owner's title to land through a tax foreclosure, the property must be identified in the foreclosure proceedings and described with reasonable certainty, so that a

person of ordinary intelligence can, from an examination of the foreclosure proceedings, locate the property sought to be foreclosed. *Napier v. Runkel,* 9 Wn. (2d) 246, 114 P. (2d) 534, 137 A. L. R. 175; *Wingard v. Pierce County,* 23 Wn. (2d) 296, 160 P. (2d) 1009; *Turpen v. Johnson,* 26 Wn. (2d) 716, 175 P. (2d) 495. If, however, the description affords an intelligent means of identifying the property and does not mislead, it is sufficient. *Ontario Land Co. v. Yordy,* 44 Wash. 239, 87 Pac. 257 (affirmed by the supreme court of the United States, 212 U. S. 152, 53 L. Ed. 449, 29 S. Ct. 278); *Stanchfield v. Blessing,* 55 Wash. 620, 104 Pac. 800; *Lara v. Peterson,* 56 Wash. 70, 105 Pac. 160; *Continental Distributing Co. v. Smith,* 74 Wash. 10, 132 Pac. 631; *National Bank of Commerce v. Davies,* 112 Wash. 106, 191 Pac. 879; *Merges v. Adams,* 137 Wash. 208, 242 Pac. 43; *Wingard v. Pierce County, supra; Turpen v. Johnson, supra*; Notes (1942) 137 A. L. R. 184.

In the *Yordy* case, *supra,* this court said:

"It is a well-established principle of law that a description in a deed, or other instrument affecting title to real estate, is sufficient if it affords an intelligent means for identifying the property, and does not mislead. In other words, if a person of ordinary intelligence and understanding can successfully use the description in an attempt to locate and identify the particular property sought to be conveyed, the description answers its purpose and must be held sufficient."

██ It is true, as stated in the case of *Napier v. Runkel, supra,* that property sought to be foreclosed should be so described as to admit of its identification by recourse to official records, or at least by some means which may be referred to as common or general knowledge, concerning which accurate information may be easily obtained. However, the description need not be so detailed as to point out visually the exact boundaries of the land or with such precision that one who is totally unacquainted with the locality could find the property without further inquiry.

In the *Turpen* case, *supra,* this court quoted approvingly the following language found in 51 Am. Jur. 904, Taxation, § 1035:

" 'The purpose of requiring a description of the property in the notice of a tax sale or of tax foreclosure proceedings is two fold: (1) to warn the owner that his property is to be sold, so that he can prevent the sale by paying his taxes, and (2) to advise prospective purchasers, so that they can investigate the property and determine whether they want to bid; and such notice must ordinarily describe the property to be sold, with reasonable certainty, so that a person of ordinary intelligence, from an examination of the foreclosure proceedings, can locate the property sought to be foreclosed. The property should be so described as to admit of its identification by recourse to official records, or at least by some means which may be referred to as common or general knowledge, concerning which accurate information may easily be obtained. . . .

" 'Whether the description in a tax notice is sufficient is a question of fact. Ordinarily, if the description is sufficient to notify the owner, it is sufficient to notify the public. While the description should be such as to enable both owner and bidder from its terms to locate with substantial certainty the land to be sold, it need not be so detailed as to point out visually its precise boundaries so that an utter stranger unacquainted with the locality and ignorant of the neighbors could find it without inquiry.' "

█ A description will be liberally construed to afford the basis of a valid grant, and a deed will not be declared void for uncertainty of description if, by resort to such extrinsic evidence as is admissible, it can be determined what property the deed was intended to convey.

In the *Yordy* case, *supra,* and again in the *Wingard* case, *supra,* and for a third time in the *Turpen* case, *supra,* this court quoted with approval the following passage from 1 Jones, The Law of Real Property in Conveyancing, 268, § 323:

"The first requisite of an adequate description is that the land shall be identified with reasonable certainty, but the degree of certainty required is always qualified by the application of the rule that that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the

means of identification. The description will be liberally construed to afford the basis of a valid grant. It is only when it remains a matter of conjecture what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels."

Also in the *Turpen* case, *supra,* appears the following quotation taken from *Sengfelder v. Hill,* 21 Wash. 371, 58 Pac. 250:

" 'To render a deed void for uncertain description, there must be either a fatal infirmity in the description, appearing on the face of the instrument, or an inability to apply the given description to any particular property. When the objection to the description is made upon the first ground, its sufficiency is determined by an inspection of the deed itself, without ulterior inquiry. But, before a deed will be declared void for the latter reason, all sources of inquiry which the description itself and the circumstances surrounding the parties and the conditions existing at the time of its execution naturally suggest must be exhausted in a vain effort to locate the property.' "

With these rules and principles of law in mind, we turn our attention to the descriptions of the property as they appear throughout the tax foreclosure proceedings, also in the tax deeds to the county and in the deeds from the county to the respondent city.

The description of the first tract here involved gives the following information: (1) The tract is specifically identified as tax lot 21; (2) it lies within section 5, township 14 north, range 2 west of W. M., in Lewis county, Washington; (3) it is situated south of Eastern Land Company's Addition and west of Hanson Addition; and (4) it contains 3.28 acres, more or less.

The description of the second tract affords the following information: (1) The tract is specifically identified as tax lot 75; (2) it lies within the northeast quarter of the northeast quarter of section 8, township 14 north, range 2 west of W. M., in Lewis county, Washington; (3) it is situated between Hanson street and Center street; (4) it is known as the Nudd Tract; and (5) it contains one acre, more or less.

Reference to the county assessor's book of Old Plats, p. 38, a copy of which was introduced in evidence, shows two tracts or lots drawn to scale and marked 21 and 75 respectively, lying immediately south of Eastern Land Company's Addition and immediately west of Hanson Addition; the size, shape, and location of the tracts are indicated by lines, angles, and figures noted on the plat.

The property here in question had uniformly in the past been described by metes and bounds, as shown by various deeds appearing in the record herein, and it is not disputed that such was the proper method to be used in describing this property. Under Rem. Rev. Stat., § 11137, the assessor was authorized to give tax lot numbers to tracts of land so described in his plat and description book. This the assessor did in the instant case, and these numbers, when placed on the tax roll, designated the land here involved, as described by metes and bounds in the plat and description book, thereby making it unnecessary for the assessor to enter on the tax roll itself a metes and bounds description of the property.

The deputy county assessor, having the official plat before him, identified thereon the two tax lots 21 and 75, the numbers being marked on the plat in red ink. He was then asked to compare the descriptions on the plat with the descriptions set forth in respondents' complaint. Having done so, he testified that the descriptions covered the same property. The deputy assessor's testimony was in effect corroborated by that of the city engineer of Centralia, although he admitted that there were some slight discrepancies in figures.

Had appellant, the former owner of the property described in the complaint, or any other person interested in that property, been desirous of locating it, he could, in our opinion, easily have done so from the descriptions given in the tax foreclosure proceedings. He would first have been informed by the descriptions in the tax foreclosure proceedings themselves of the general locality of tax lots 21 and 75, the one by reference to its location with respect to Eastern Land Company's Addition and Hanson Addition, the other by reference to its location with respect to Center street and

Hanson street, and being known as the Nudd Tract; he would also have been immediately informed thereby as to the approximate sizes of the respective tracts. Armed with this preliminary information, he easily could have found these tracts, marked as tax lots, on the assessor's plat. Viewing the assessor's plat, with its delineations, any person of average intelligence, particularly if he were the owner of the property and acquainted with the locality, could with reasonable certainty have located the boundaries of the land to be sold under the pending foreclosure proceedings and have determined that it was the property as correctly described in the complaint herein. Had such person availed himself of the sources of inquiry readily at hand, he would not, in our opinion, have made "a vain effort to locate the property."

At the conclusion of the evidence in the case, the trial court took the matter under advisement, upon briefs submitted by the respective parties, and thereafter wrote and filed a lengthy memorandum opinion analyzing the facts and reviewing the applicable legal authorities.

 We quote certain of the observations made by the trial court, with which we are in full accord:

"It must be assumed that when the foreclosure by the county took place that the defendant [appellant] Nudd saw the above descriptions. He saw that both tracts had tax lot numbers, that the areas of both were given and that Tax Lot 21 had three definite boundaries. He saw Tax Lot 75 with sufficient description to make it easy to locate, and particularly when it had the notation 'a parcel of land known as the Nudd tract.' By the use of ordinary intelligence he would be led immediately to the records in the assessor's office. He would there find an assessment roll covering Tax Lot 21 and Tax Lot 75, with the same descriptions as hereinbefore set forth [in the tax foreclosure proceedings and in the deeds from the county to the City of Centralia.]. He would further be led to the assessor's plat book, which would show the exact location and dimensions and area of the two tracts. Even though the descriptions may be indefinite in some details, the location of the tracts and the property involved could be determined easily by reference to the records in the assessor's office.

" . . . we must assume that when the notice was given in the foreclosure proceeding that the defendant Nudd, who claims that he was the owner since 1917, read the description, and having read the description, we believe by the use of ordinary effort and the application of ordinary intelligence he could have easily determined that his land was involved. This is particularly true when he knew that he had not paid any taxes or assessments of any kind. . . .

"The descriptions set forth in the tax foreclosure proceedings and the deeds herein referred to, while somewhat deficient, are adequate to put an owner or interested person on notice and, further, would enable one to easily locate the property did he make a bona fide effort to do so. The descriptions here were sufficient under the circumstances and the court acquired jurisdiction in the tax foreclosure proceedings. The deeds to the city, which contained the same descriptions as those in the foreclosure, were also sufficient to vest title."

Under the rules heretofore stated, we are of the opinion that the descriptions in the tax foreclosure proceedings and the tax deeds were sufficient to convey title to the land described in the complaint, which it is conceded sets forth a correct description of the property here involved.

 The land here in question was private property subject to taxation. Appellant must have known that, under ordinary procedure, the land would be assessed under some description. The record fails to show any effort or desire on his part to ascertain how or under what description any levy of taxes against the land would be, or had been, made. It is conceded that, for many years immediately prior to the foreclosure, he failed to pay the taxes on the land. He was bound to know the law with reference to taxation and must have been aware of the fact that nonpayment for such a length of time would cause a loss of his land by tax foreclosure and sale. Yet he did absolutely nothing until almost ten years had elapsed after foreclosure and sale of the property. Then, for the first time, presumably after the property had become valuable, did he manifest any concern as to its ownership. Only when respondents took steps to quiet the title which they had obtained through tax foreclosure pro-

ceedings did appellant do anything toward establishing a prior, paramount, and superior title in himself.

The situation in these respects is very much like those which obtained in *Ontario Land Co. v. Yordy, supra, Baylis v. Kerrick,* 64 Wash. 410, 116 Pac. 1082, and *Wingard v. Pierce County, supra,* in each of which this court commented with disfavor upon the position taken by the party attempting to nullify the effect of the tax foreclosure proceedings. In the *Wingard* case, *supra,* the opinion concludes with this statement:

"It is simply a case of an owner virtually abandoning his property by failing to pay the taxes and then endeavoring to regain it after it has been foreclosed and sold, and after it has suddenly become valuable by reason of some fortuitous set of circumstances. This is not the kind of situation in which the assistance of a court of equity is to be successfully invoked."

Although this is not an action initiated by the appellant to set aside the tax foreclosure proceedings, nevertheless, to grant the prayer of his answer would have that very effect.

The decree of the trial court is affirmed.

MALLERY, C. J., BEALS, ROBINSON, and HILL, JJ., concur.