**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| LARRY HOPPE, a single man, | ) | No. 78108-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CEDAR POINTE OF SEATTLE | ) | UNPUBLISHED OPINION |
| OWNERS ASSOCIATION, a | ) | |
| Washington non-profit corporation; | ) | |
| LOREN FORSBERG and JANE DOE | ) | FILED: March 11, 2019 |
| FORSBERG, husband and wife and the | ) | |
| marital community composed thereof, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

MANN, A.C.J. — Larry Hoppe non-judicially foreclosed on seven condominium units and their appurtenances in the Cedar Pointe of Seattle condominium complex after Mark Johnson, the developer of the complex, defaulted on a loan. Hoppe later believed that certain parking spaces and storage areas were appurtenant to the units he foreclosed upon and filed a quiet title action. The trial court concluded, on summary judgment, that Hoppe did not have a valid claim to the parking spaces and storage areas. The court also issued sanctions against Hoppe and his attorneys for filing a frivolous and meritless lawsuit. Hoppe appeals. We affirm.

I.

Johnson formed Cedar Pointe of Seattle, LLC (Cedar Pointe LLC) to construct the Cedar Pointe of Seattle condominium complex. The condominium complex consists of 76 condominium units, 93 parking spots, and 55 storage areas. On March 5, 2007, Johnson recorded the Declaration of Condominium for Cedar Pointe (Declaration). The Declaration named Cedar Pointe LLC as the declarant.

Article 7 of the Declaration describes Limited Common Elements.[1] "The Limited Common Elements allocated to each Unit are . . . (b) any parking space assigned to the Unit pursuant to Article 8, and (c) any storage area assigned to the Unit pursuant to Article 8."[2] "Parking spaces and storage areas . . . may be reallocated between Units Owners only with the approval of the Board and by an amendment to the Declaration."

Article 8 provides:

Parking spaces and storage areas . . . are or will be allocated to Units as Limited Common Elements in Schedule B or by amendment to Schedule B signed only by the Declarant. Until assigned to Units or designated as common parking by the Declarant, unassigned parking spaces designated as common parking are for common use. . . . Declarant's right to assign parking spaces and storage areas shall terminate on the earlier of the date on which Declarant relinquishes its Development Rights, or seven years after the date of recording the Declaration.

"Until all Units have been sold, the Declarant shall have the right to control the use of any unassigned parking spaces and carports."

Article 10 reserved development and special declarant rights:[3]

---

[1] Limited Common Elements are defined by the Condominium Act as "a portion of the common elements allocated by the declaration or by operation of [statute] for the exclusive use of one or more but fewer than all of the units." RCW 64.34.020(27).

[2] (Emphasis added.)

[3] Development rights are defined by the Condominium Act as:
any right or combination of rights reserved by a declarant in the declaration to: (a) Add real property or improvements to a condominium; (b) create units, common elements, or limited common elements within real property included or added to a condominium; (c) subdivide units

Section 10.1 Development Rights. The Declarant reserves the following Development Rights: (a) the right to assign parking spaces or storage areas to Units as Limited Common Elements pursuant to Section 8.1.

. . . .

Section 10.2 Special Declarant Rights. The Declarant reserves the following Special Declarant Rights so long as the Declarant owns a Unit: (a) to complete any improvements . . . (b) to maintain sales offices . . . (c) to use easements . . .

To finance the project, Johnson took out a loan from a Washington Bank. Separately, Johnson took out a private loan from Hoppe. Hoppe's loan was secured by a second position deed of trust on 21 condominium units within the Cedar Pointe of Seattle condominium complex "together with all the tenements, hereditaments, and appurtenances now of hereafter thereunto belonging or in any wise appertaining, and the rents, issues, and profits thereof."

Johnson also borrowed $400,000 from Loren Forsberg. Johnson failed to repay that loan and on May 29, 2012 Forsberg obtained a judgment against Johnson for $422,000. That same day, Johnson and Forsberg executed a forbearance agreement, whereby Forsberg would refrain from executing the judgment against Johnson in exchange for, among other things, eleven parking spaces and thirteen storage units at the Cedar Pointe of Seattle condominium complex. The parking spaces were spaces: 1, 2, 5, 38, 63, 64, 65, 69, 70, 71, and 74. The storage areas were units: A, C, E, F, G, H, J, K, M, 4, 11, 29, and 30 (collectively, parking spaces and storage areas). It is these specific parking spaces and storage areas that are the subject of this dispute.

---

or convert units into common elements; (d) withdraw real property from a condominium; or (e) reallocate limited common elements with respect to units that have not been conveyed by the declarant.
RCW 64.34.020(18).

On June 29, 2012, after Johnson defaulted on the Hoppe loan, Hoppe non-judicially foreclosed on seven units.[4] Hoppe purchased all seven units at the foreclosure sale and recorded the deed. Soon after the foreclosure sale, Hoppe conveyed his seven units to Cassidy Property Investments, LLC (Cassidy LLC). Hoppe is the sole owner of Cassidy LLC.

Prior to the foreclosure sale, Cedar Pointe LLC had not assigned any storage areas to the units Hoppe purchased. Cedar Pointe LLC had assigned parking spaces 47, 67, 72, 73, 76, 90, and 92 to the units Hoppe purchased. It is undisputed that these seven assigned parking spaces were appurtenant to the units Hoppe purchased, and therefore Cassidy LLC retains the exclusive use thereof. However none of the parking spaces and storage areas that are the subject of this dispute were ever assigned to the units Hoppe purchased. Regardless, Hoppe later came to believe that he was the rightful owner of the parking spaces and storage areas, which Forsberg was using pursuant to the forbearance agreement.

On August 22, 2017, Hoppe filed a quiet title action against Forsberg and the Condominium Association. After a period of discovery, both Forsberg and Hoppe moved for summary judgment. The trial court granted Forsberg's motion. The court also awarded Forsberg his attorney fees as a sanction against Hoppe and his attorneys, pursuant to CR 11 and RCW 4.84.185. The court explained that Hoppe "and his counsel brought this action without any evidence that the [parking spaces and storage areas] were ever assigned or allocated to the 7 Units [Hoppe] foreclosed upon."

> Due to a total lack of evidence that the 11 parking and 13 storage spaces were ever assigned or allocated to the 7 Units [Hoppe] foreclosed upon

---

[4] Due to unrelated dealings between the parties, when the foreclosure took place Hoppe's security interest remained on only seven of the original twenty-one units.

-4-

. . . leads this Court to the inescapable conclusion that this action is totally devoid of merit and frivolous. It was also not well grounded in law and fact. . . . Under these circumstances [Hoppe] and his counsel have engaged in bad faith litigation and should be sanctioned. Because attorney fees are awarded under RCW 4.84.185 and CR 11, there is no additional attorney fee award.

Hoppe unsuccessfully moved for reconsideration. The trial court then issued supplemental findings of fact, including that RCW 64.34.455 further supported an award of attorney fees to Forsberg.

II.

A.

Hoppe argues first that because Johnson's right to the parking spaces and storage areas was part of his ownership rights, which Hoppe foreclosed upon, the exclusive right to use the parking spaces and storage areas was appurtenant to the units that he acquired.[5] We disagree.

We review a summary judgment order de novo and engage in the same inquiry as the trial court. Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005); King v. Rice, 146 Wn. App. 662, 668, 191 P.3d 946 (2008). Summary judgment is appropriate if, when viewing the facts in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "By filing cross motions for summary judgment,

---

[5] Hoppe also argues that Forsberg's claim to the parking spaces and storage areas is void. But because a "plaintiff in an action to quiet title must prevail, if he prevails at all, on the strength of his own title, and not on the weaknesses of the title of his adversary," City of Centralia v. Miller, 31 Wn.2d 417, 422, 197 P.2d 244 (1948), the validity of Forsberg's title is irrelevant and we decline to review Forsberg's claim to the parking spaces and storage areas.

the parties concede there were no material issues of fact." Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014).

We review a condominium declaration as a mixed question of law and fact. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). "The factual issue is the declarant's intent, which we discern from the face of the declaration. The declaration's legal consequences are questions of law, which we review de novo." Lake, 169 Wn.2d at 526 (internal citation removed). When interpreting a declaration, the same principles apply as when interpreting a deed. Lake, 169 Wn.2d at 531. "We determine the intent of the parties from the language of the [declaration] as a whole." Newport Yacht Basin Ass'n of Condominium Owners v. Supreme Northwest, Inc., 168 Wn. App. 56, 64, 277 P.3d 18 (2012). "In the construction of a [declaration], a court must give meaning to every word if reasonably possible." Newport, 168 Wn. App. at 64.

B.

The Declaration establishes three types of property within the condominium: units, common elements, and limited common elements. Units are defined as "a physical portion of the Condominium designated for separate ownership." Common elements are "all portions of the Condominium other than Units." And limited common elements are "a portion of the Common Elements allocated in Article 7 for the exclusive use of one Unit." Every unit owner has the right to use the common elements in common with all other owners, but only has the exclusive right to use the limited common elements that are specifically allocated to that owner's unit. The Declaration does not specifically provide any entity with an ownership interest in either common or limited common elements. Instead, common elements may only be encumbered if a

certain percent of all unit owners approve, which indicates that all owners own the common elements jointly.

Hoppe asserts that his deed of trust, which included all of Johnson's ownership interests, necessarily included an ownership interest in the parking and storage spaces. But Hoppe disregards the fact that Johnson never had an ownership interest in the parking and storage areas. Because no unit owner is afforded an ownership interest in common elements until the common element is assigned as a limited common element to a unit, Johnson's interest in the unassigned spaces was limited to his declarant's rights. Therefore, for Hoppe to have a valid interest in the parking spaces and storage areas, he must be able to show that the parking spaces and storage areas were previously assigned to the units he foreclosed upon. Because he cannot show the assignment ever occurred, we agree with the trial court that Hoppe's claim to the parking spaces and storage areas is meritless.

III.

A.

Hoppe argues that the trial court erred when it sanctioned him. We disagree. We review sanctions under an abuse of discretion standard. Wash. State Physicians Ins. Exchange & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." Wash. State Physicians Ins. Exchange & Ass'n, 122 Wn.2d at 339. "The sanction rules are designed to confer wide latitude and discretion upon the trial judge to determine what sanctions are proper in a given case." Wash. State. Physicians Ins. Exchange & Ass'n, 122 Wn.2d at 339 (internal citation removed).

CR 11(a) provides, in relevant part:

The signature of a party or of an attorney [on a filing] constitutes a certificate by the party or attorney that . . . to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
    (1) it is well grounded in fact;
    (2) is warranted by exiting law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law;

. . . .

If a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose . . . an appropriate sanction . . . including a reasonable attorney fee.

CR 11 is intended to "deter baseless filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).

First, the filing "must lack a factual or legal basis before it can become the proper subject of CR 11 sanctions." Bryant, 119 Wn.2d at 220. Second, even "[i]f a [filing] lacks a factual or legal basis, the court cannot impose CR 11 sanctions unless it also finds that the attorney who signed [the filing] failed to conduct a reasonable inquiry into the factual and legal basis of the claim." Bryant, 119 Wn.2d at 220. The court should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the [filing] was submitted." Bryant, 119 Wn.2d at 220.

The trial court did not abuse its discretion in sanctioning Hoppe pursuant to CR 11. Hoppe based his entire claim on the fact that parking spaces and storage areas were appurtenant to the seven units he purchased. But the Declaration indicates that the only way for this to be true was if the parking spaces and storage areas were ever assigned to the units. Without proof of such an assignment, Hoppe's claim lacked a factual basis.

-8-

Further, Hoppe and his attorneys failed to conduct a reasonable inquiry into the factual and legal basis of this claim. "The reasonableness of an attorney's inquiry is evaluated by an objective standard[,]" where the court determines "whether a reasonable attorney in the like circumstances could believe his or her actions to be factually and legally justified." Bryant, 119 Wn.2d at 220.

Forsberg's attorneys explained the factual inaccuracies of Hoppe's allegations to Hoppe and his attorneys. In pre-suit discussions, after describing how the Declaration allows the declarant to assign spaces to individual units, Forsberg's attorney continued:

> There were 8 parking spaces assigned to those 7 units your client purchased from the [declarant]. I am unaware of any document that granted your client any right to use any other parking or storage spaces that were assigned and transferred to my client from the [declarant]. If I am mistaken, please forward me those documents, such as an assignment or bill of sale.

To this, Hoppe's attorney responded that "it is plain that the alleged transfers of the parking and storage spaces associated with Mr. Hoppe's units to Mr. Forsberg are void ab initio as those transfers were not recorded." But neither Hoppe nor his attorney ever explained how the parking spaces and storage areas came to be "associated with Mr. Hoppe's Units" in the first place. Instead, they were fixated on the argument that Forsberg's claim was void, rather than being concerned with the validity of Hoppe's own claim.

Without any evidence that the parking spaces and storage areas were assigned to Hoppe's units—and therefore without properly investigating whether such an assignment had occurred—Hoppe and his attorneys filed suit. The trial court determined that this was a failure to reasonably investigate the factual basis of the claim:

> This issue should have been resolved by conducting a reasonable review of the [Declaration] prior to filing the lawsuit. Such a reasonable inquiry, measured by an objective standard, should have revealed to a reasonable party or attorney that the rights to control the use of and assign unassigned parking and storage spaces were not appurtenances to any one or more of the 7 Units [Hoppe foreclosed upon].

This conclusion was not manifestly unreasonable or based on untenable grounds, and therefore was not an abuse of the trial court's discretion.

## B.

Additionally, Hoppe argues that the trial court erred in sanctioning him under RCW 4.84.185. RCW 4.84.185 provides that "the court having jurisdiction may, upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action." "A lawsuit is frivolous when it cannot be supported by any rational argument on the law or facts." Stiles v. Kearney, 168 Wn. App. 250, 260, 277 P.3d 9 (2012).

Hoppe's argument that the parking spaces and storage areas were appurtenant to his units required proof that the declarant assigned the parking spaces and storage areas to the units. Without proof of such an assignment, Hoppe's entire claim was meritless. Moreover, the case law is well established that a plaintiff seeking to quite title must succeed on the strength of his own title and not on the weakness of his adversary. City of Centralia, 31 Wn.2d at 422. Therefore, the trial court did not abuse its discretion in finding that sanctions were also warranted under RCW 4.84.185.[6]

---

[6] Because we affirm the trial court's imposition of sanctions pursuant to CR 11 and RCW 64.34.455, we need not address whether sanctions were also warranted pursuant to RPC 3.3(a)(3).

C.

The trial court also determined that Forsberg was entitled to attorney fees pursuant to RCW 64.34.455. RCW 64.34.455 provides that if someone "fails to comply with any provisions . . . of the [condominium] declaration or bylaws, any person . . .adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party."

Hoppe argues that the trial court erred in concluding that he failed to comply with the Declaration. But in making his claim that the parking spaces and storage areas were appurtenant to his units, Hoppe ignored the plain language of the Declaration. Further, Forsberg was adversely affected by this failure in having to expend time and resources to defend against Hoppe's frivolous suit. Therefore, the trial court did not abuse its discretion in concluding that Forsberg is entitled to his attorney fees pursuant to RCW 64.34.455.

IV.

Hoppe next argues that the trial court erred in awarding Forsberg $35,285.80 for his attorney fees and costs.

A.

Hoppe first argues that if his complaint was truly frivolous then Forsberg was required to file a motion to dismiss, thus any fees awarded other than for a motion to dismiss was in error. Hoppe cites to Biggs v. Vail, 124 Wn.2d 193, 198, 876 P.2d 448 (1994) for the proposition that "Rule 11 sanctions must be brought as soon as possible to avoid waste and delay." Biggs does not stand for this proposition.

-11-

In Biggs, the Supreme Court noted that "[n]ormally, such late entry of a CR 11 motion would be impermissible, since without prompt notice regarding a potential violation of the rule, the offending party is given no opportunity to mitigate the sanction." Biggs, 124 Wn.2d at 198. The Court then determined that Biggs's case was different because Biggs was provided with notice that sanctions were contemplated. "Although the better practice is to inform counsel specifically of the nature of his or her misconduct and the possibility of CR 11 sanctions, we find that notice in general that sanctions are contemplated is sufficient for the later imposition of CR 11 sanctions." Biggs, 124 Wn.2d at 199.

Similarly, here, Hoppe was provided with notice before he filed suit that his concerns were unsupported and that if he filed suit Forsberg would seek attorney fees against him. Forsberg's attorney wrote to Hoppe: "Any attempt by your client [(Hoppe)] to file a lawsuit against my client [(Forsberg)] will be met with stiff resistance, and he will seek fees against both your client and the attorney who signs their name on the complaint." Therefore, just as in Biggs, Hoppe was on notice before he filed suit that his claim was meritless and that Forsberg would seek sanctions against him.

Further, Hoppe made this argument below, to which the trial court responded: "In order to properly decide this issue, this Court required evidence outside of the Complaint. A dismissal motion under CR 12(b) was, therefore, not available. The issue had to be resolved by summary judgment motion . . . [which Forsberg requested] just weeks after the Complaint was filed." Hoppe filed his complaint on August 22, 2017. Forsberg moved for summary judgment a mere four months later on December 22,

-12-

2017. Therefore, the trial court did not abuse its discretion in awarding Forsberg attorney fees on work done beyond just a motion to dismiss.

B.

Second, Hoppe argues that CR 11 sanctions must be directly attributable to the sanctionable filings, so Forsberg can only recover fees spent in responding to those filings that the court expressly held to be sanctionable. But in making this argument, Hoppe disregards the fact that the trial court found sanctions and fees were warranted on numerous grounds. The trial court also determined that fees were warranted pursuant to RCW 4.84.185 and RCW 64.34.455. So, even if Hoppe is correct, the court was still able award Forsberg sanctions and fees under either RCW 4.84.185 or RCW 64.34.455.

C.

Finally, Hoppe argues that the court erred in awarding fees for duplicative and unnecessary work. "The amount of a fee award is discretionary, and will be overturned only for manifest abuse." Boeing Corp. v. Sierracin Corp., 108 Wn.2d 38, 65, 738 P.2d 665 (1987). "[C]ourts should be guided . . . by the lodestar method . . . [which] affords trial courts a clear and simple formula for deciding the reasonableness of attorney fees." Mahler v. Szucs, 135 Wn.2d 398, 434, 957 P.2d 632 (1998).

The trial court did not manifestly abuse its discretion. First, the court determined how much time each of Forsberg's attorneys reasonably spent on the case and what each attorney's reasonable hourly rate was. Then, the court reduced the amount requested for time spent on unsuccessful or unnecessary work. The court reduced "the total fee award against the attorneys for CR 11 violations for the time Defendant

-13-

Forsberg spent on the Stipulation and Agreed Protective Order." This was not a manifest abuse of discretion.

V.

Forsberg requests an award of his attorney fees on appeal. RAP 18.1 allows us to award a party their fees on appeal if "applicable law grants to a party the right to recover reasonable fees or expenses." RCW 64.34.455 allows a court to award the prevailing party their reasonable attorney fees in an appropriate case if a party "fails to comply with any provision . . . of the [condominium] declaration or bylaws." Because Hoppe's entire case, and therefore also his appeal, was based on his misreading of the plain language of the declaration—which has been pointed out to Hoppe numerous times—Hoppe failed to comply with the provisions of the declaration. Therefore, we award Forsberg, the prevailing party, his reasonable fees on appeal. To not do so would only incentivize future appeals of frivolous suits and dilute sanctions already awarded.

We affirm.

_Mann, ACJ_

WE CONCUR:

_Chun, J._

_Dwyer, J._